STATE of Minnesota, Respondent,

v.

Earl William CROCKER, Appellant.

No. C4–86–1312.

Court of Appeals of Minnesota.

March 31, 1987.

Review Granted May 20, 1987.

Hubert H. Humphrey, III, Atty. Gen., Paul R. Kempainen, Sp. Asst. Atty. Gen., St. Paul, Julius E. Gernes, Winona Co. Atty., Winona, for respondent.

C. Paul Jones, State Public Defender, Mark F. Anderson, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by FORSBERG, P.J., RANDALL and STONE *, JJ., with oral argument waived.

## OPINION

RANDALL, Judge.

Appellant Earl Crocker was convicted of criminal sexual conduct in the third degree, Minn.Stat. § 609.344, subd. 1(c) (1984) and kidnapping, Minn.Stat. § 609.25, subd. 1(2)

---

* Acting as judge of the court of appeals by appointment pursuant to Minn. Const. art. 6, § 2.

(1984). He contends the trial court abused its discretion by admitting *Spreigl* evidence, and that the evidence was insufficient to sustain his kidnapping conviction. We reverse and remand for a new trial.

## FACTS

Appellant, 57 years old, went to Winona with an acquaintance, 23 year old Billy Goetz, on the evening of February 16, 1986. Appellant and Goetz lived in separate apartment units in the same building in nearby St. Charles. At a bar appellant approached two young college students, R.A.M. and C.A.M., and offered to buy them beer. After initially refusing, the women accepted.

Appellant and the women drank several pitchers of beer. Appellant tried to get R.A.M. to buy his car, explaining that he lost his driver's license because of several D.W.I.s and did not need the car since he had other cars. R.A.M. said she could not afford the car. Appellant offered to give her the car, a 1970 Buick, if the women would come back with him and Goetz to St. Charles and "party" for awhile. "Party" was explained as having a few beers with no strings attached. R.A.M., C.A.M. and Goetz testified that there was no mention of exchanging sex for the car. Goetz told them appellant had given away cars before. The women agreed to go to St. Charles.

In St. Charles, appellant lost his temper while attempting to unlock his apartment. After the four had watched television for awhile, C.A.M. drove appellant to a store to buy pizza. She became lost, got stuck in a ditch, and suggested going for help. Appellant told C.A.M. she was not going anywhere. He grabbed at her sweater, and mentioned sex. C.A.M. sustained scratches on her neck as she fought off appellant. She was able to run away, and she was picked up by passing motorists who took her to their home where they called the police.

Meanwhile, appellant walked back to his apartment and told Goetz to use Goetz's tow truck to pull the car out of the ditch.

Appellant told Goetz C.A.M. was waiting in the car.

Appellant remained in the apartment alone with R.A.M. While she was on the couch, appellant tried to kiss her. When she told him to stop, he grabbed her and pushed her into the adjacent bedroom a few feet away. He pushed her down on the bed, pulled her pants down, and engaged in sexual intercourse. Appellant and R.A.M. got dressed. The police arrived in response to C.A.M.'s earlier report. R.A.M. told the police appellant raped her and the police arrested appellant.

At trial the State presented two *Spreigl* incidents. The first occurred one month before the charged crime. Appellant's 15 year old stepdaughter testified that after appellant was drinking and her mother left the apartment, appellant came up from behind and touched his stepdaughter's breast. The second incident, introduced solely through court records, was a 1977 Iowa conviction for lascivious acts with a child. Appellant digitally penetrated a seven year old girl with whom he was alone in his residence. This also occurred after appellant had been drinking.

Appellant did not testify, but relied on a consent defense. Following his convictions for criminal sexual conduct in the third degree and kidnapping, he was sentenced to 87 months in prison for the sexual offense.

## ISSUES

1. Did the trial court abuse its discretion in admitting the *Spreigl* evidence?

2. Was the evidence sufficient to sustain appellant's kidnapping conviction?

## ANALYSIS

### I.

*Spreigl evidence*

The State contends the *Spreigl* incidents show a common scheme or plan by demonstrating appellant was prone to assaulting females when he found himself alone with them after he had been drinking. Appel-

lant argues that the 1977 offense is too remote in time and bears little similarity to the charged offense. On review, the decision to admit *Spreigl* evidence will not be reversed absent a clear showing that the trial court abused its discretion. *State v. Doughman*, 384 N.W.2d 450, 454 (Minn. 1986).

The 1977 Iowa offense was not closely related either in time or place to the charged offense. *See State v. Casady*, 392 N.W.2d 629, 633 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. Sept. 24, 1986) (error to admit evidence of incident which occurred thirteen years before trial and five years before alleged sexual abuse began). The 1977 offense is dissimilar to the charged offense and carries too strong a potential for unfair prejudice as compared to its most probative value, if any. Moreover, pedophilia is not similar to the sexual aggression alleged here. In order to be admissible, *Spreigl* evidence must be relevant and material, and have probative value not substantially outweighed by its potential for unfair prejudice. *State v. Morrison*, 310 N.W.2d 135, 137 (Minn.1981).

Finally, the State has not demonstrated a need for such evidence, which would make the evidence material. The State presented evidence of two other incidents, one *Spreigl* and one part of the charged incident. Each occurred within a month of the current offense, and we will not disturb their admissibility on appeal.

■ The potential for prejudicial impact was aggravated by the improper procedure used to introduce the 1977 offense. Over defense objection, the trial court allowed the Iowa court records, including a twenty page document which included summaries of prospective witnesses' testimony and appellant's punishment for the offense, to go to the jury and into the jury room as an exhibit. Appellant had no opportunity to cross-examine or confront the people whose hearsay statements formed the basis for the written summaries.

Even for impeachment purposes, the 1977 offense could not have been proved by court records unless appellant took the stand and denied committing the act. Minn.R.Evid. 609(a). Appellant did not take the stand. Therefore, the 1977 felony conviction cannot come in under the guise of impeachment by prior conviction, and must rise or fall on its admissibility as *Spreigl* evidence. Use of a prior conviction for *Spreigl* purposes does not allow proof through court records under Minn.R.Evid. 609(a) unless the defense stipulates to that method of proof. Here it was improper to introduce the 1977 offense through court records which included summaries of testimony not subject to cross-examination.

The State argues that court records provide clear and convincing evidence of appellant's participation in the 1977 offense. This, however, is a question of admissibility for the court to determine. *State v. Matteson*, 287 N.W.2d 408, 411 (Minn.1979). Such a record of conviction may be used *in camera* to determine admissibility, but may not be presented to the jury absent a stipulation by the defense. *See State v. Wahl*, 394 N.W.2d 536, 538 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. Nov. 19, 1986) (prosecutor and defense counsel agreed on statement summarizing factual basis of *Spreigl* conviction).

■ Admission of the 1977 offense was not harmless error. A prior conviction for digital penetration of a 7 year old will, by itself, likely convict a defendant or, at a minimum, severely prejudice and damage the credibility of a defendant in a sexual assault case. This is precisely the danger that the Minnesota Supreme Court has addressed:

The general judicial hostility toward evidence of other crimes is well known and justifiable, e.g., McCormick, *Evidence*, 2nd ed., 447. There is too great a chance that the jury will punish for past crimes even if uncertain about present ones. Consequently, such evidence is admissible only if falling within carefully enumerated categories which for a particular reason have especially great probative value. Minnesota Rules of Evidence, Rule 404(b).

Yet, even when so restricted, evidence of other crimes has still troubled courts, including this one. At length in *State v. Spreigl*, 272 Minn. 488, 139 N.W.2d 167 (1965) we expressed our misgivings about this evidence and repeated that doubtful cases must be resolved in favor of excluding the evidence.

*State v. Wakefield*, 278 N.W.2d 307, 308 (Minn.1979). In *Wakefield* the prosecution wanted to introduce evidence of defendant's prior bad acts which took place a few years before. The defendant stood trial on criminal charges for those alleged bad acts, and was acquitted.

Thus, there is a difference between *Wakefield* and this case. Appellant's 1977 offense resulted in a conviction, not an acquittal. However, for purposes of assessing the 1977 offense as legitimate *Spreigl* evidence, the caution expressed in *Wakefield* relative to doubtful evidence is appropriate here, and we find it controlling. In *Wakefield*, the supreme court pointed out the basic unfairness of evidence of prior misconduct, even when technically admissible. Here, we are not presented with prejudicial evidence from a prior acquittal. Rather, we have prejudicial evidence so substantially and procedurally doubtful "that doubtful cases must be resolved in favor of excluding the evidence." *Wakefield*, 278 N.W.2d at 308. The error in receiving *Spreigl* evidence requires a new trial.

## II.

*Kidnapping*

█ Appellant contends he did not confine or remove R.A.M. within the meaning of the kidnapping statute. We agree and vacate the kidnapping conviction.

The kidnapping statute provides:

Whoever, for any of the following purposes, confines or removes from one place to another, any person without the person's consent * * * is guilty of kidnapping * * *;

(2) To facilitate commission of any felony or flight thereafter;

Minn.Stat. § 609.25, subd. 1(2) (1984).

It is settled that kidnapping is a separate, distinct offense. *State v. Morris*, 281 Minn. 119, 160 N.W.2d 715 (1968); *see State v. Dooley*, 380 N.W.2d 582 (Minn.Ct. App.1986), *pet. for rev. denied* (Minn. Mar. 27, 1986). The State argues that since there is no qualification of length of time or distance of confinement or removal, appellant's acts in moving the victim a few feet to the bedroom makes out the separate crime of kidnapping. *Morris*, 281 Minn. at 122, 160 N.W.2d at 717. Neither the legislature nor the supreme court has ordained that every sexual assault is also a kidnapping. That incongruity would literally follow every sexual assault unless a common sense test is applied to whatever criminal sexual conduct took place to see if, in fact, there was a separate crime of kidnapping.

Criminal sexual conduct employing force or coercion will necessarily, as here, involve a certain *de minimis* degree of "confinement" or "removal," even if the removal is just the few feet that the aggressor moves the victim from a standing or sitting position to the floor or to a nearby bedroom. Lying on top of another person to effectuate penetration, the physical act commonly associated with sexual assault, is always a *de minimis* "confinement." Thus, the need to examine the facts to determine if the statutory requirement of confinement or removal is present. Minn.Stat. § 609.25, subd. 1(2) (1984). Appellant's actions did not in any legal sense "facilitate" the commission of sexual assault. Appellant's actions were the sexual assault.

Appellant's actions satisfy the requisite "force or coercion" of Minn.Stat. § 609.344, subd. 1(c) (1984), but do not constitute the separate and distinct offense of kidnapping. *See State v. McEwan*, 265 N.W.2d 818 (Minn.1978) (where victims of an assault and robbery voluntarily entered the car where these acts occurred, confinement of victims did not facilitate commission of the offense).

## DECISION

The trial court committed reversible error by admitting the evidence of the 1977 Iowa offense. Evidence was not sufficient to show the commission of the separate crime of kidnapping.

Reversed and remanded for a new trial.