**STATE of Minnesota, petitioner, Appellant,**

v.

**Earl William CROCKER, Respondent.**

No. C4–86–1312.

Supreme Court of Minnesota.

July 24, 1987.

Paul R. Kempainen, Sp. Asst. Atty. Gen., St. Paul, Julius E. Gernes, Winona Co. Atty., Winona, for appellant.

C. Paul Jones, State Public Defender, Mark F. Anderson, Asst. State Public Defender, Minneapolis, for respondent.

YETKA, Justice.

We granted the state's petition for review of a decision of the court of appeals which granted defendant Earl William Crocker a new trial on a rape charge [1] and reversed a kidnapping conviction outright. *State v. Crocker*, 403 N.W.2d 277 (Minn. App.1987). The court granted a new trial on the rape charge because, in the court's opinion, the trial court prejudicially erred in admitting *Spreigl* evidence. The court reversed the kidnapping conviction outright because it concluded that the evidence was

1. Defendant is serving an 87-month prison sentence for the rape conviction. Given defendant's criminal history score of five, this is the maximum sentence permitted by the Sentencing Guidelines for a severity level VII offense without departing.

insufficient. We reverse the court of appeals and reinstate both convictions.

Complainant, R., and a friend, C., both students at Winona State University, attended a movie in Winona on Sunday afternoon, February 16, 1986, then went to a bar frequented by college students and others and began drinking beer. Two men approached them. One was 59–year-old Earl William Crocker, who is the defendant in this case, and the other was 23–year-old William (Billy) Goetz, both of whom were living in separate apartments in the same building in nearby St. Charles. Defendant told the women that he had been convicted of DWI and, therefore, could not drive. He wondered aloud if they wanted to buy one of his cars, a 1970 Buick. They said no. Defendant then said he would give it to them and would even pay for the insurance. The women thought that this was "too good to be true," but Goetz told the women that defendant had given away cars before and that he was making a genuine offer. They accepted. The hitch was that the women had to drive with Goetz and defendant back to St. Charles since, without the car, Goetz and defendant had no way of getting home. Defendant also said that they could "party" there, but he also made it clear that this meant only having a beer or two. The women accepted defendant's offer and, with Goetz driving, accompanied the men to St. Charles. On the way, defendant made sexual advances toward R., who was in the back seat with him, but she fended him off and he stopped.

They arrived in St. Charles around 9:30 p.m. Once there, defendant put on a display of his temper when the door to his apartment would not open. Goetz told the women to be careful because when defendant got mad, he got violent. After they began watching the end of a movie on television, defendant offered to go get a pizza and suggested that, since he could not legally drive a car, one of the women drive him there and thereby learn how to operate the car at the same time. C. did this. A police officer saw defendant's car outside the "Kwik Trip" store at 9:45 p.m. After leaving there at 9:50 p.m., C. made a wrong turn and got stuck when she tried to turn the car around off the highway. According to her, when she said she was going for help, defendant said she was not going anywhere and grabbed at her top and started to pull. When she resisted, she received a long, highly visible scratch going from just below the chin down to just above the breast area. She managed to get away from defendant, flagged down a passing car and accompanied the people in the car to her home in St. Charles, from where she called the police. She told the police that defendant had tried to rape her and that she feared defendant would hurt her friend, R.

Meanwhile, defendant apparently hitched a ride to the apartment and told Goetz, who operated a towing service, to go and pull out the car. According to R., after Goetz left the apartment, defendant picked her up, forced her into the bedroom and raped her. The police arrived at the apartment at 10:33 p.m., shortly after the rape was completed. According to R., defendant told her not to answer the door, but she did anyway. She immediately told the police that she had been raped, and they arrested defendant. Defendant denied the allegations against him and said that he had agreed to give the women the car and $100 in exchange for sex and that he had not done anything Billy did not do.

Both women testified at trial. Their testimony was corroborated in a number of ways, including photographs of C.'s scratch and medical corroboration of R.'s claim that intercourse occurred. Goetz, also testifying for the state, corroborated their testimony that nothing was said about their providing sex in exchange for the car. Defendant, who had three prior felony convictions in Iowa—a 1977 one for lewd and lascivious conduct, a 1981 one for burglary, and a 1981 one for terroristic threats—did not testify or call any witnesses. Since defendant did not testify, the state could not use the prior convictions for impeachment purposes under Minn.R.Evid. 609. However, it sought, and was allowed, to present evidence of three other crimes in its case in chief pursuant to Minn.R.Evid.

404(b): (a) testimony of C. about defendant's assault on her in the car shortly before 10:00 p.m., (b) testimony of defendant's 15–year-old stepdaughter that he attempted to assault her sexually in the house in St. Charles less than a month earlier, and (c) evidence of defendant's lewd and lascivious conduct with respect to a 7–year-old girl in Iowa in 1977.

1. The court of appeals found no fault with the trial court for admitting the testimony of C. about defendant's assault on her or the testimony of defendant's stepdaughter about defendant's recent attempted sexual assault on her. However, it concluded (a) that the offense committed in 1977 was inadmissible, (b) that it was error to allow the state to prove this offense through a certified copy of the 1977 conviction, and (c) that the error in admitting the evidence of the 1977 conviction was prejudicial error requiring a new trial. We hold otherwise.

■ (a) The court of appeals ruled that the crime committed in 1977 was inadmissible because it occurred 9 years earlier and because it involved sexual abuse of a 7–year-old girl, not the sexual abuse of a woman or a sexually mature young woman. In *State v. Filippi*, 335 N.W.2d 739, 743 (Minn.1983), we stated: "In determining relevancy, we have generally required that the other crime be similar in some way—either in time, location, or *modus operandi*—to the charged offense, although this, of course, is not an absolute necessity." In the instant case, the conclusion that the assault was remote in time ignores the fact that, as the prosecutor told the trial court, defendant was in prison for most of the 9 years preceding the current offense and had little opportunity to commit sex crimes in the interval between the 1977 offense and the three offenses committed in 1986 (on his stepdaughter, on C., and on R.). Numerous cases of this court hold that if a defendant was in prison in the interval between the prior offense and the current offense and was incapacitated from committing crimes, then the mere passage of time is not necessarily of any significance. *See State v. Filippi*, 335

N.W.2d 739, 743–44 (Minn.1983), and cases cited therein. Further, it makes a difference under our cases if the older offense is part of a "pattern" of similar misconduct. *See, e.g., State v. Anderson*, 275 N.W.2d 554, 555 (Minn.1978). The fact that defendant committed a sex offense in 1977, was in prison for most of the next 9 years, and then in 1986 committed two sex offenses before the current offense shows a relevant pattern of sexually assaultive conduct. The fact that the 1977 offense involved the sexual assault of a 7–year-old girl rather than a woman or a sexually mature young woman should not necessarily make a difference. The court of appeals stated that "pedophilia is not similar to the sexual aggression alleged here." *Crocker*, 403 N.W.2d at 279. We do not agree with this reasoning. The 1977 offense in question involved the opportunistic sexual assault of a vulnerable 7–year-old girl during a brief period of time when defendant was alone with her. The January 1986 offense involved the opportunistic attempt to assault a vulnerable 15–year-old stepdaughter sexually during a brief period of time when the girl's mother went to the grocery store on a quick errand. The assault on C. was a similar opportunistic assault on a young woman who was in a temporarily vulnerable position. The charged offense occurred under similar circumstances.

■ (b) The state presented a certified copy of the 1977 conviction, a set of papers that included the complaint (which, in turn, contained a summary of the expected testimony of the various witnesses) and the sentence imposed after defendant pleaded guilty. Defense counsel did not object to the state proving the offense in that way. Defense counsel objected that the evidence was irrelevant, but, once the trial court ruled against him on this, he expressly said "no objection" when the papers were offered. The court of appeals [on this ground] thus had no need to decide the issue of the propriety of using court records to prove the prior offense under Minn.R.Evid. 404(b). However, since the court did address the issue, we also will do so. The court said that the only time one can use court records to prove a prior of-

fense under Rule 404(b) is when the parties stipulate to that procedure. We disagree. Consider in this respect 2 D. Louisell & C. Mueller, Federal Evidence § 140 at 176 (rev. ed. 1985) (stating that, under Rule 404(b), prior misconduct may be proven through use of prior judgment of conviction by relying on the hearsay exception in Rule 803(22) for final judgments in felony criminal cases); 2 J. Weinstein & M. Berger, Weinstein's Evidence—United States Rules ¶ 404[10] n. 1 at 404–69 (1986) (stating that "an authenticated copy of a prior conviction would be admissible pursuant to Rule 803(22) if the requirements of Rule 404 are met"); 22 C. Wright & K. Graham, Federal Practice and Procedure § 5249 (1978) (stating that "[a] prior conviction is obviously the most efficient method of proof" of a prior offense under Rule 404(b) because, "under general principles of collateral estoppel a defendant would be precluded from disputing the ultimate facts necessary to the conviction," but that "[s]ometimes, however, the conviction will not reveal the facts concerning the prior crime that are relevant in the instant case" and, in such a case, the party proving the other crime will want to call witnesses rather than rely on an authenticated copy). While usually the state will need to call witnesses to prove the other crime, this is not always the case. In this case, particularly given the defendant's lack of objection, it was entirely proper for the trial court to allow the state to use certified court records to prove the 1977 offense.

■ (c) We also conclude that the court of appeals erred in ruling that any error in admitting the evidence was prejudicial. The state's evidence was very strong; defendant did not testify, call any witnesses or put forth any defense at all; and even under the court of appeals' analysis, evidence of two other sexual assaults (the one against the stepdaughter and the one against C.) was properly admitted. Thus, while we conclude that no error was committed in admitting the evidence of the 1977 offense, we also believe that if there was error, it was harmless error.

2. In addition to giving defendant a new trial on the rape charge, the court of appeals reversed the kidnapping conviction outright on the ground that it was unsupported by sufficient evidence of "confinement" or "removal" of the complainant apart from that incidental to the rape. This decision is inconsistent with our decision in *State v. Morris*, 281 Minn. 119, 160 N.W.2d 715 (1968). Interpreting our kidnapping statute, section 609.25, subdivision 1(2), we there attached significance to the fact that the legislature chose not to use the language of Model Penal Code § 212.1, which includes as an element of kidnapping that the victim be removed a substantial distance or be confined for a substantial period. We held that it is not necessary under our statute to establish that the defendant confined his victim for a substantial period of time or removed her a substantial distance. We also rejected the contention that, since the restraint on the victim was only incidental to the sexual assault, it was unfair to sustain convictions for both kidnapping and indecent assault. We pointed out that the defendant was sentenced only for the kidnapping because section 609.035 permits punishment only for the most serious of multiple offenses committed as part of a single behavioral incident. Finally, we added:

> While we [are concerned that] the punishment provided by statute may be imposed in cases where the circumstances do not warrant it, we cannot say as a matter of law that the legislature did not intend the limited confinement and restraint which occurred in this case to constitute the crime of kidnapping. If under some circumstances the statutory penalty is unduly harsh, it is the duty of the prosecutor, the court, and the correctional authorities to modify the charge, the sentence, or the period of confinement so that it will be commensurate with the gravity of the crime and the harm or potential harm which is inflicted by the defendant.

281 Minn. at 123–24, 160 N.W.2d at 718.

In one subsequent case, *State v. McEwan*, 265 N.W.2d 818 (Minn.1978), we re-

lied on the above-quoted language from *Morris* to vacate a kidnapping conviction.

In numerous subsequent cases, we continued to hold that, under section 609.035, a defendant convicted of both kidnapping and the crime which the kidnapping facilitated could be sentenced for only one of the two offenses. *See, e.g., State v. Patch,* 329 N.W.2d 833 (Minn.1983). The legislature changed this in 1983 by amending section 609.035 and by adding a new section 609.-251 so that now a defendant may be sentenced both for kidnapping and the crime facilitated by the kidnapping.

■ Had it not been for subsequent action by the Sentencing Guidelines Commission, there might be an argument in favor of re-examining *Morris* because the combination of the *Morris* holding and the 1983 legislation seems to allow unfair exaggeration of the criminality of a defendant's conduct in those cases whe.e the confinement was completely incidental to the crime committed during the course of the kidnapping. However, under Minnesota Sentencing Guidelines and Commentary II.F., any multiple sentencing in this situation is presumed concurrent. Further, if multiple sentencing is used in this situation, it will not have any impact in the future when the defendant is sentenced for subsequent offenses since Minnesota Sentencing Guidelines II.B.1.a. and Comment II.B.102. provide that, in order to prevent inequities due to variability in prosecutorial practices, the offender is assigned only one criminal history point when multiple sentences are imposed pursuant to section 609.251. In other words, although multiple sentencing is now permitted in this situation, the change is minimal in practical effect because the multiple sentences are presumed concurrent and the multiple sentencing cannot serve as the basis for unfairly increasing the defendant's criminal history score and presumptive sentence the next time he is convicted.

■ Any claim that *Morris* unconstitutionally gives prosecutors too much discretion is answered by the line of United States Supreme Court cases holding that, under the Constitution, the Congress or a state legislature is free to punish separately each step leading to the completion of a transaction and punish also the completed transaction. *Garrett v. United States,* 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985). In other words, the Constitution does not bar the legislature from punishing a rapist for the completed offense of rape as well as for the confinement of the victim that is necessarily incidental to the commission of the crime of rape. A scheme of multiple statutes covering the same conduct does give the prosecutor broad discretion. It leaves the prosecutor free to charge one defendant with two offenses and an equally culpable defendant with one offense. However, the rule is that the prosecutor is free to prosecute under any statute that a defendant violates provided that the prosecutor's exercise of his discretion does not violate the intent of the legislature and is not based on a discriminatory motive relating to race, religion or other arbitrary classification. *Wayte v. United States,* 470 U.S. 598, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985); *United States v. Batchelder,* 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979); *Bordenkircher v. Hayes,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978); *State v. Herme,* 298 N.W.2d 454 (Minn.1980).

■ The court of appeals relied on *Morris* in a case in which the only "removal" or "confinement" of the victim was that connected with the commission of the rape, as here. *State v. Dooley,* 380 N.W.2d 582 (Minn.App.), *petition for review denied* (Minn.1986). We saw no need then and see no need now to re-examine *Morris.* Accordingly, since it is still a viable precedent, we reinstate the kidnapping conviction.

In summary, we reverse the decision of the court of appeals and reinstate both convictions.

Reversed and judgment of conviction reinstated.