**STATE of Minnesota, Respondent,**

v.

**Randy Dean FOX, Appellant.**

No. C3–86–944.

Court of Appeals of Minnesota.

Dec. 2, 1986.
Review Denied Jan. 16, 1987.

Hubert H. Humphrey, III, Atty. Gen., Paul R. Kempainen, Sp. Asst. Atty. Gen., St. Paul, Marcia Rowland, Carver Co. Atty., Chaska, for respondent.

C. Paul Jones, State Public Defender, Mark F. Anderson, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by POPOVICH, C.J., and WOZNIAK and FORSBERG, JJ., with oral argument waived.

## OPINION

FORSBERG, Judge.

Randy Fox appeals from his conviction for second degree assault and contends that police used suggestive identification procedures, his prior kidnapping conviction was not admissible for impeachment purposes, and there was insufficient evidence to support the jury's verdict. We affirm.

## FACTS

Appellant was charged with second degree assault under Minn.Stat. §§ 609.222 and 609.11, subd. 4 (1984). At his jury trial, 26 year-old T.D. testified that at about 11:30 p.m. on May 17, 1985, she was hitchhiking on Lake Street in Minneapolis. After appellant picked her up, she agreed to go with him and have sex with another woman in exchange for three and one-half grams of cocaine. They drove around for a while, smoked some of T.D.'s marijuana, and drank beer.

Then appellant stopped his truck along a highway to "use the bathroom." When he got back into the truck, he told T.D. to take her clothes off. She replied: "Well, honey, I thought we were going to get to the place and do it there." He pulled out a steak knife and said: "You're going to do what I tell you to do." He put his arm around T.D. and held the knife up to her neck, but she twisted his arm, grabbed the knife and jumped out of the truck. Appellant gave chase, but when he grabbed at T.D.'s hair, he only pulled off her wig. She stopped a passing car, jumped onto the hood and rode four miles to the Chaska police station.

Chaska Police Supervisor William Tarbell interviewed T.D. after the assault. She described her assailant as:

A white male about 5 foot 4, between 28 and 32 years of age, about 140 pounds, light brown hair that came down to the collar line, and that he had a start of a beard, which would have been a full-faced beard, and he had scar on his—I believe his left cheek that appeared to a burn scar, and that he had blue eyes.

She also said he was wearing a white T-shirt. T.D. described the truck as "brown with a white camper-type cover," possibly a Dodge, with a brown and plaid interior, an AM radio, and a stick shift. Photographs of appellant's brown 1980 Ford pickup truck and the steak knife, which T.D. still had in her hand when she arrived at the police station, were admitted into evidence.

Chaska Police Officer Reuben Kelzenberg investigated the scene of the assault and found numerous items scattered along the roadway: a small red purse, a pair of sandals, a wig, a calendar, and an Old English 800 Malt Liquor can. There were numerous footprints along the road from a lug or vibram-type sole about 11½" long. T.D. identified the purse, the sandals, and the wig as hers and said appellant was drinking beer from a gold can similar to the Old English 800 Malt Liquor can.

Appellant presented an alibi defense. Wayne Smith, who is married to appellant's mother, said appellant bought his truck on May 16, 1985. Smith described it as maroon with a maroon and black topper and running boards on the sides, and said that when he saw the truck on May 17th, there was a blanket spread over the front seat and the interior was "immaculately clean." Smith claimed he was at the V.F.W. in Mound with appellant and his wife from 6:30 until 10:30 p.m. on the night of the assault.

Marsha Fox, appellant's wife, testified that appellant owns a pair of boots, but they do not have vibram soles. When asked if appellant owns any white T-shirts, she replied: "Not that I know of." Fox also claimed she was at the V.F.W. with appellant and Smith on the night of the assault.

Jean Smith, appellant's mother, testified that appellant is 5'8", has a scar on his face, and wears size 8½ shoes. She couldn't recall ever seeing appellant wear a white shirt, but did not know whether he owned one. She said her husband went with appellant and his wife to the V.F.W. on May 17th.

Two other defense witnesses, James Bosma and Rita Dingman, said they saw appellant and Smith at the V.F.W. on May 17th. However, Bosma was only there between 4:05 and 4:40 p.m. Dingman, appellant's mother-in-law, was working as a bartender that day and remembered seeing appellant and Smith, but did not know what time they left. Dingman did not mention seeing her daughter, Marsha Fox.

The State sought to admit appellant's 1981 kidnapping conviction both as *Spreigl* evidence and for impeachment. The trial court considered the factors listed in *State v. Jones,* 271 N.W.2d 534, 538 (Minn.1978) and determined that the kidnapping conviction was admissible to impeach appellant if he testified. Appellant chose not to do so.

The jury found appellant guilty of second degree assault. Appellant moved for a new trial, contending that the line-up was impermissibly suggestive, the trial court abused its discretion by admitting his prior conviction for impeachment, and there was insufficient evidence. The motion was denied and appellant was sentenced to imprisonment for a presumptive term of 26 months.

## ISSUES

1. Was the photographic line-up impermissibly suggestive?

2. Did the trial court abuse its discretion by admitting appellant's prior conviction to impeach him if he testified?

3. Was there sufficient evidence?

## ANALYSIS

### I.

■ T.D. was assaulted on May 17, 1985. Several months later, Detective Warren Breezee prepared a line-up of six photographs. When T.D. viewed the line-up on October 16, 1985, she immediately identified appellant's picture and stated: "That's him; I'll never forget his face." Defense counsel moved to suppress that identification because appellant was the only person in the line-up with a noticeable scar. The prosecutor argued that the pictures in the line-up were very similar and some showed facial markings. The trial court found the line-up was proper and the identification evidence was admissible:

> The scar on the left side of the defendant's face is not so easily discernible in the photograph of the defendant that would make it impermissibly suggestive. Three of the four photographs on the front page of Exhibit 1 had male individuals of approximately the same height and similar facial characteristics. Additionally, Detective Breezee testified that the alleged victim picked the defendant out immediately, which leads the court to conclude her decision was based on the general appearance of the defendant and the scar was not the issue upon which identification turned.

The use of unduly suggestive identification procedures may constitute a violation of a defendant's right to due process. *See Neil v. Biggers,* 409 U.S. 188, 196, 93 S.Ct. 375, 380–81, 34 L.Ed.2d 401 (1972). However, each case must be decided upon the totality of the circumstances and a conviction will only be reversed if the procedures were "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Id.* at 196–197, 93 S.Ct. at 381 (citing *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968)); *see Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977) (reliability is linchpin in determining admissibility of identification testimony).

Here the line-up consists of six pictures of young white males with brown hair and moustaches. Four of the six are wearing white or off-white shirts, four are approximately the same height as appellant, and all have very similar features. We agree with the trial court that appellant's facial scar is not so conspicuous as to render the line-up impermissibly suggestive. Finally, upon consideration of the totality of the circumstances and the relevant factors, we find no substantial likelihood of misidentifi-

cation. *See Biggers* 409 U.S. at 200, 93 S.Ct. at 382–83.

## II.

 A prior felony conviction may be admitted to impeach a witness if the trial court finds that its probative value outweighs its prejudicial effect. Minn.R.Evid. 609(a)(1); *see Jones,* 271 N.W.2d at 538 (listing five factors trial court must consider in weighing probative value against prejudicial effect). A trial court's admission of evidence will be sustained unless a clear abuse of discretion is shown. *State v. Brouillette,* 286 N.W.2d 702, 707 (Minn. 1979).

The trial court expressly considered the *Jones* factors and found appellant's 1981 kidnapping conviction was admissible to impeach him if he testified. The trial court also ruled that the State would only be allowed to ask appellant if he had been convicted of kidnapping, and that a cautionary instruction would be given before the fact of conviction was introduced. We have considered the relevant factors, and conclude that appellant has not shown a clear abuse of discretion.

## III.

Appellant contends there was insufficient evidence that he was the person who assaulted T.D. However, we must assume the jury believed T.D. when she identified appellant as her assailant and rejected his alibi defense. *See State v. Merrill,* 274 N.W.2d 99, 111 (Minn.1978) (judging credibility of witnesses is clearly function of jury). Her identification was not based upon limited or fleeting observation. *See State v. Spann,* 287 N.W.2d 406, 407–08 (Minn.1979). T.D.'s uncorroborated testimony is sufficient to support the jury's guilty verdict. *See State v. Walker,* 310 N.W.2d 89 (Minn.1981) (requiring corroboration if witness' identification is based upon fleeting or limited observation).

## DECISION

A photographic line-up was not impermissibly suggestive, the trial court did not abuse its discretion by ruling that a prior conviction was admissible to impeach appellant, and there is sufficient evidence to support the verdict.

Affirmed.