Scott Richard SEELYE,
Petitioner, Appellant,

v.

STATE of Minnesota, Respondent.

No. C5–88–920.

Court of Appeals of Minnesota.

Sept. 27, 1988.

C. Paul Jones, Public Defender, Cathryn Middlebrook, Asst. State Public Defender, Minneapolis, for petitioner, appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co. Atty., Vernon E. Bergstrom, Chief, Appellate Section, Lisa A. Berg, Asst. Co. Atty., Minneapolis, for respondent.

Considered and decided by WOZNIAK, C.J., and PARKER and SCHUMACHER, JJ., without oral argument.

## OPINION

WOZNIAK, Chief Judge.

Following a jury trial, Scott Richard Seelye was convicted of aggravated robbery, burglary in the first degree, and assault in the second degree. Seelye petitioned for postconviction relief. His petition was denied, and he has appealed. We affirm.

## FACTS

Appellant Scott Seelye was convicted by a jury of aggravated robbery, first degree burglary, and second degree assault. He was sentenced to a term of 104 months for the aggravated robbery offense; the other convictions were merged under Minn.Stat. § 609.035 (1986). His petition for postconviction relief was denied, and he has appealed to this court, arguing: (1) the trial court abused its discretion in admitting *Spreigl* evidence of other crimes committed by Seelye; (2) the evidence was insufficient as a matter of law to sustain his convictions; (3) the photographic display used by the police was impermissibly suggestive; and (4) the trial court abused its discretion in not allowing expert testimony on the

unreliability of the state's main witness based on her use of cocaine. We affirm.

## ISSUES

1. Did the trial court err in admitting *Spreigl* evidence of other crimes committed by appellant?

2. Was the evidence sufficient to sustain appellant's convictions?

3. Was the photographic identification display properly prepared and presented to witnesses?

4. Did the trial court abuse its discretion in excluding expert testimony on the credibility of a witness who was a cocaine user?

## ANALYSIS

### I.

 Evidence that a person has committed crimes other than the one for which he is being tried is usually inadmissible. Such evidence, however, may be admitted to show motive, intent, absence of mistake or accident, identity of the accused, or a common scheme or plan. Minn.R.Evid. 404(b); *State v. Sweeney*, 180 Minn. 450, 455, 231 N.W. 225, 227 (1930). There are three requirements for the admission of evidence of other crimes: (1) the evidence of the accused's participation in the other crime must be clear and convincing, (2) the evidence must be relevant and material to the state's case, and (3) the probative value must outweigh the prejudicial effect. *State v. Filippi*, 335 N.W.2d 739, 743 (Minn.1983). Admission of evidence of these other crimes is left to the sound discretion of the trial court; its decision will not be reversed absent a clear abuse of discretion. *State v. Spencer*, 366 N.W.2d 656 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. July 11, 1985).

### 1. *Clear and Convincing Evidence*

 The evidence of Seelye's participation in the other crimes consisted of Caroline Bougie's testimony that Alfred Dyer and Seelye dressed as the victims described them; that Dyer carried a shotgun, a common element in all three crimes;

that they brought money, drugs, and a Tandeberg speaker back with them; and that Seelye admitted he participated in the crime. The Tandeberg speaker was identified by one of the victims as the one stolen from him. In addition, Seelye was identified by Keith Reinfeld, who was robbed by a black man with a shotgun and Seelye in the alley behind the Mortenson–Elliot robbery scene. Dyer was identified by Georgetta Gravening as the black man with a shotgun who, accompanied by another man, robbed her. This evidence meets the clear and convincing standard.

### 2. *Relevance and Materiality*

To be relevant, *Spreigl* evidence must be closely related in time, place, or *modus operandi* to the charged offense. *Filippi*, 335 N.W.2d at 743.

a. Time: The *Spreigl* incidents occurred 10 days after the Bishir robbery. This is well within the admissible time frame. *See, e.g., State v. Nelson*, 326 N.W.2d 917 (Minn.1982) (two years and nine months between *Spreigl* offense and charged offense); *State v. Morrison*, 310 N.W.2d 135 (Minn.1981) (offenses within a year of each other).

b. Place: The *Spreigl* incidents occurred only 20 blocks from the Bishir residence. *See State v. Lindahl*, 309 N.W.2d 763 (Minn.1981) (*Spreigl* incident in Brooklyn Park used in charged offense in Aitkin).

c. Modus operandi: The modus operandi of the *Spreigl* incidents need not be identical to that of the charged offense; it is sufficient to show the same basic modus operandi was used. *See Nelson*, 326 N.W. 2d at 918; *Lindahl*, 309 N.W.2d at 765. The modus operandi in this case included a break-in at a residence, an assault, and a search for drugs and money. The modus operandi is sufficiently similar to meet this requirement.

At trial, one of the issues was Bishir's identification of Seelye. The defense argued Bishir's drinking, marijuana consumption, and being hit in the head made his identification of Seelye unreliable. The

*Spreigl* evidence was relevant and material.

### 3. *Probative Value v. Prejudicial Effect*

Seelye argues the prejudicial impact far outweighed the probative value of this evidence. The balancing of probative value and prejudicial impact is within the sound discretion of the trial court. *State v. Lewis*, 385 N.W.2d 352, 356 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. May 29, 1986). The probative value of the *Spreigl* evidence in supporting Bishir's identification was high because of the similarity in modus operandi. The trial court instructed the jury on the limited use of the *Spreigl* evidence, both before its admission and in the jury instructions. Seelye has not shown a clear abuse of discretion.

### II.

■ In reviewing a claim of insufficiency of the evidence to support a conviction,

[t]he evidence must be viewed in the light most favorable to the prosecution and it is necessary to assume that the jury believed the state's witnesses and disbelieved any contrary evidence.

*State v. Ulvinen*, 313 N.W.2d 425, 428 (Minn.1981). The evidence must be such that the jury, giving due regard to the presumption of innocence and the state's burden of proving guilt beyond a reasonable doubt, could reasonably have found the defendant guilty. *State v. Merrill*, 274 N.W.2d 99, 111 (Minn.1978).

■ A guilty verdict may be based on the testimony of a single eyewitness. *State v. Williams*, 307 Minn. 191, 239 N.W.2d 222 (1976). Identification testimony need not be positive and certain; it is sufficient if a witness testifies it is his opinion, belief, impression, or judgment that the defendant is the person he saw commit the crime. *State v. Burch*, 284 Minn. 300, 170 N.W.2d 543 (1969). The credibility of an eyewitness is for the jury to decide. *State v. Daniels*, 361 N.W.2d 819, 826 (Minn. 1985).

■ Seelye attacks the reliability of Bishir's identification on several grounds. The only real inconsistency is Bishir's descriptions of the other intruders. This was made known to the jury, which credited the identification. *See Daniels*, 361 N.W.2d at 826. The evidence was sufficient.

### III.

■ Where a conviction is based on eyewitness identification at trial following a pretrial photographic identification, that conviction will be reversed only if the photographic

identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

*Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). The two-question test is:

1) Were the pretrial identification procedures unnecessarily suggestive; that is, did they unfairly single the defendant out for identification?

2) If the procedures were suggestive, did the witness' in-court identification have an adequate independent origin so as to negate or reduce the likelihood of misidentification? This question involves the consideration of the following factors:

a) the opportunity of the witness to view the criminal at the time of the crime;

b) the witness' degree of attention;

c) the accuracy of the witness' prior description of the criminal;

d) the level of certainty demonstrated by the witness at the photo display; and

e) the length of time between the crime and the viewing of the photo display.

*Neil v. Biggers*, 409 U.S. 188, 196–200, 93 S.Ct. 375, 380–83, 34 L.Ed.2d 401 (1972); *State v. Blegen*, 387 N.W.2d 459, 463 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. July 31, 1986).

#### A. Unnecessary Suggestiveness

■ In a photographic display such as the one at issue, it is not necessary that every person in the display fit the witness' description exactly. *Id.* It is sufficient if

all the people in the display bear a reasonable physical similarity to the accused. *State v. Myers,* 413 N.W.2d 122, 125 (Minn. Ct.App.1987), *modified on other grounds,* 416 N.W.2d 736 (Minn.1987).

In this case, Seelye claims the photo display was unnecessarily suggestive in two ways: he was described as Indian, and the others in the display were Caucasian; and second, his photo was the only one showing someone with a ponytail.

The first argument is not persuasive. The fact that the others in the display were Caucasian does not alter the physical resemblance they bore to Seelye.

The ponytail contention is stronger. The ponytail was the most distinctive feature of Bishir's description of his assailant. Only Seelye's photograph depicted someone with a ponytail.

Assuming, without deciding, the ponytail made the display unnecessarily suggestive, the second part of the *Neil v. Biggers* test must be applied: determining whether there was an adequate independent origin of the witness' in-court identification to negate the suggestiveness. This requires the application of the factors listed earlier.

B. Adequate Independent Origin

1. Opportunity to view: Bishir saw his assailant through a glass door on a well-lit porch while walking the 12 to 15 feet across his living room. He talked face-to-face with this person, and he also saw him as he pushed his way into the house.

2. Degree of attention: Bishir testified he was not feeling intoxicated, despite drinking four or five beers and smoking half a marijuana joint. His attention was not distracted by anything as he walked to the door and talked to his assailant. There is nothing to indicate he was not doing what anyone else would do under the circumstances: focusing on the person at his door at 12:30 a.m. to try to figure out who it was.

3. The witness' description: Bishir's description was, on the whole, accurate. The height was off, and he did not notice a mustache, but he accurately described the clothes worn, facial features, complexion, hair, and weight of Seelye.

4. Certainty: Bishir's identification was somewhat tentative. He stated to the police when he looked at Seelye's photograph, "[I]f this man had a thinner mustache and weighed 160 pounds and about five foot seven inches, I would say that's definitely your man." (Seelye is five foot nine.)

5. Time after crime: Bishir viewed the photographic display 12 days after the crime. This is reasonably prompt. *See State v. Fox,* 396 N.W.2d 862, 864 (Minn.Ct. App.1986), *pet. for rev. denied* (Minn. Jan. 16, 1987) (delay of several months acceptable).

The totality of the circumstances does not indicate a danger of irreparable misidentification. Assuming the photographic display was unnecessarily suggestive, there was an adequate independent origin of Bishir's in-court identification.

IV.

At trial, Seelye offered the testimony of Dr. Richard Kingston of St. Paul–Ramsey Medical Center about the effects on memory and perception of freebasing cocaine in the large amounts described by Ms. Bougie.

The trial court excluded this testimony for lack of foundation, stating, "[T]here is no evidence as to how much cocaine she was using; none at all." A decision on whether to admit expert testimony rests within the discretion of the trial court. On appeal, this decision will not be reversed in the absence of apparent error. *State v. Myers,* 359 N.W.2d 604, 609 (Minn. 1984).

The state contends that, regardless of the foundation for Dr. Kingston's testimony, it was not admissible because it would have been expert testimony on the credibility of a witness. *See State v. Saldana,* 324 N.W.2d 227, 231 (Minn.1982). Testimony on the truthfulness or untruthfulness of a witness, however, can be distinguished from evidence of drug or alcohol use that may affect a witness' ability to perceive or to recall her perceptions. We

need not decide, however, whether defects of capacity due to drug use may be explored by expert testimony. *See generally McCormick on Evidence* § 45 (West 3rd ed. 1984); Minn.R.Evid. 702. Dr. Kingston did not treat Ms. Bougie. More importantly, he did not have sufficient information on the amount of cocaine she was using. The trial court did not abuse its discretion in ruling the proposed testimony lacked foundation.

## DECISION

1. The trial court did not abuse its discretion in admitting *Spreigl* evidence.

2. Evidence of appellant's guilt was sufficient to sustain the convictions.

3. Any error in the photographic display was harmless.

4. The trial court did not abuse its discretion in excluding Dr. Kingston's testimony.

AFFIRMED.