**STATE of Minnesota, Respondent,**

v.

**Jonathan Edward BUHL, Appellant.**

No. C0–94–106.

Court of Appeals of Minnesota.

Aug. 9, 1994.

Review Denied Oct. 27, 1994.

John M. Stuart, State Public Defender, University of Minnesota, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, and Robert M.A. Johnson, Anoka County Atty., Anoka, for respondent.

Considered and decided by PARKER, P.J., and RANDALL and SHORT, JJ.

## OPINION

PARKER, Judge.

In appellant Jonathan Edward Buhl's trial for four counts of aggravated robbery, two counts of attempted criminal sexual conduct in the second degree, one count of assault in the second degree, four counts of kidnapping, and one count of motor vehicle theft, the trial court admitted evidence of a prior burglary conviction. The prosecutor submitted a certified copy of the prior conviction to the trial court, told the jury of the conviction without going into detail, and called no witnesses to testify regarding the facts of the prior conviction. Buhl did not object at trial to this manner of presenting the prior crime evidence. The trial court denied Buhl's motion for a new trial. Buhl argues that admission of this evidence is reversible error. We agree and reverse and remand for a new trial. Because Buhl's other convictions stemming from this incident were, in crucial part, dependent on the burglary conviction, we also reverse and remand for a new trial on those charges.

## FACTS

This case arose out of a convenience store robbery in Blaine on April 8, 1993. Just after 6:00 a.m. that day, owner Gerald Newton arrived to open the store. Clinton Ambuehl, a regular customer, was waiting for the store to open. As they entered the store, they were surprised by a man already in the building and brandishing a large handgun that looked like a .44 magnum. The gunman wore a stocking cap, and his face was covered below his eyes with a bandanna.

The gunman ordered both men to the back of the store, told Ambuehl to lie on the floor, and demanded that Newton open the safe. Newton did so and gave the robber money from the safe. Gail Marinac, another regular customer, then entered the store. The robber pointed his gun at her, and she attempted to flee but could not get the front door open. The gun discharged, striking a display case and a sign on the door. Marinac then complied with the robber's request that she lie on the floor next to Ambuehl. A third customer, Dennis Wagner, entered. The robber ordered him to lie down also. At the robber's order, Newton locked the front door.

The robber used duct tape to bind the hands, feet, and mouths of Newton and the customers. He removed money from their wallets and stole several cartons of cigarettes, clothing, sunglasses, stuffed toy animals, and other items.

The robber also assaulted Marinac. He picked her up and moved her to another part of the back room. The other men heard signs of a struggle and moaning. Marinac later testified that she felt the robber's hand reaching in her underwear before she fainted. She later discovered a lump on her head and bruises on her face. Her blouse and pants were undone, and her underwear was displaced.

Following the assault, the robber walked through the store, gathering various items from the store shelves. He left at about 6:30 a.m. Police, alerted by a neighbor, arrived shortly afterward. The neighbor testified she saw the robber leave the store by a back door, get into a car and drive away. Another witness, Barbara Hoernemann, who had pulled into the parking lot of the store about 6:30 a.m., saw a man outside of the store. Suspicious, she turned around and left without getting out of her car. She described the man as 28–35 years old, dark-haired, about 5 feet eight or nine inches tall, 140–155 pounds, and wearing a navy blue or black jacket. She was not asked whether Buhl was the man she saw that morning.

Police investigators concluded the robber probably entered the store through a large cooling fan at the back. Police also seized items such as cigarette butts the robber had smoked, and pieces of duct tape used to restrain the victims.

Marinac had left her car idling near the store. Police found the car at a park several blocks away. Two witnesses who live across the street from that park testified they saw a black pickup truck drive into the park around 4:00–4:30 a.m. that morning and drive out about 6:00–6:30 a.m.

On April 12, 1993, several Anoka high school students found a duffel bag hidden beneath some pine trees on a golf course near the high school. The bag contained a .44 magnum handgun, cigarette cartons, rolls of coins, toiletry articles, and men's clothing. By the time the police learned of this discovery, several items had been removed from the bag, including the gun, but the police later recovered the gun. Police traced ownership of the gun to Jeffrey Molskness of International Falls. Molskness told police his gun was missing but that he had not yet reported the loss. He also said Buhl had lived with him for a month from February 1993 through March 1993.

Police concluded that Buhl's fingerprint matched a fingerprint on a piece of the duct tape found in the back room of the store after the robbery. Meanwhile, police also found a pair of pants on the golf course near where the bag had been found. The pants had a laundry mark with the name "J. Buhl" on them.

The police arrested Buhl on May 18. He was charged with aggravated robbery, kidnapping, second degree assault, attempted second degree criminal sexual conduct, and motor vehicle theft.

At trial, Newton and Marinac said they recognized Buhl as the robber, even though much of the robber's face was covered with a bandanna, because they remembered his eyes. Ambuehl and Wagner testified that Buhl resembled the robber in size and weight. Buhl's mother identified the pants as belonging to Buhl but said he may have given them to a younger brother at some point.

At the time of the robbery, Buhl was living in Blaine with Monty Niemi, and working in his business. Niemi testified that Buhl had stayed with him and his family in March 1993, and that he bought Buhl a bus ticket to International Falls for Saturday, April 3. On Tuesday, April 6, 1993, Niemi found Buhl walking on a highway in Blaine. Niemi testified that Buhl told him his truck had been stolen. Buhl stayed at Niemi's home for the next few weeks and worked in his business. Niemi testified that Buhl slept in the same bedroom as his son and that, on the morning of the robbery, Buhl was in the room sleeping when he went to wake him as usual at 6:45—7:00 a.m. Niemi testified he was driving Buhl to work in the morning because Buhl had no transportation of his own. Buhl did not testify.

At the close of the state's case, the prosecution introduced *Spreigl* evidence of Buhl's December 1990 conviction for a burglary in Anoka County. Although the jury heard no details of the prior crime, the trial court was aware of these details from a copy of the complaint in the prior conviction and the parties' memoranda submitted for a motion in limine. In midafternoon on August 9, 1990, Buhl had entered a home through a basement or bedroom window. The homeowner saw Buhl leaving her house, and when Buhl saw her watching him, he ran. There was no evidence that he used or carried a weapon during this offense. Buhl was sentenced to prison and was released January 20, 1993.

At trial, the state argued there was similarity in the modus operandi and this evidence was needed for identification since Buhl had an alibi. Defense counsel objected, but the trial court overruled that objection. The trial court cautioned the jury about hearing evidence of a prior conviction of the defendant, and told the jury they were not to convict the defendant on the basis of the prior conviction. The prosecutor submitted a copy of the conviction to the trial court but did not present witnesses. The full substance of her statement to the jury about Buhl's prior conviction was as follows: "the evidence is that the defendant was convicted of burglary in the second degree in Anoka County on December 3rd, 1990. With that, the state rests, your honor." Defense counsel did not object to this method of presenting the evidence. The prosecutor's only other reference to this evidence was during closing argument when she said, "You can also consider the fact that the defendant was convicted of a prior burglary in Anoka County in December of 1990. You can consider that. The law states that you can consider that evidence as evidence of identity, of identification." The jury convicted Buhl on all charges, and the trial court denied his motion for new trial.

## ISSUES

1. Did the trial court err in admitting evidence of a prior conviction of a burglary if the only similarities between the prior and present incidents were that both began as burglaries and were committed in Anoka County within the past three years?

2. Was the *Spreigl* evidence necessary to prove identity?

3. Did the trial court err in sentencing defendant separately for stealing an automobile parked with engine idling outside the convenience store?

## DISCUSSION

■ The decision to admit evidence of prior crimes lies in the sound discretion of the trial court and shall not be reversed absent a clear abuse of discretion. *State v. Moorman,* 505 N.W.2d 593, 601 (Minn.1993); *State v. De Wald,* 464 N.W.2d 500, 503 (Minn.1991).

■ Generally, evidence of a prior crime or other "bad act" is not admissible to demonstrate a criminal disposition or to prove the present charge. *Id.* at 600; *State v. Norris,* 428 N.W.2d 61, 69 (Minn.1988); Minn.R.Evid. 404(b). Evidence of prior

crimes is admissible, however, to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id.* The evidence must be relevant and material to the state's case, and the probative value of the evidence must outweigh its prejudicial effect. *Norris,* 428 N.W.2d at 69. The evidence of prior crimes or "bad acts" is known as *Spreigl* evidence. *See State v. Spreigl,* 272 Minn. 488, 491, 139 N.W.2d 167, 169 (1965).

Minnesota law limits the use of *Spreigl* evidence because of the risk that a jury may give excessive weight to the record of defendant's prior crimes. *Id.* at 496, 139 N.W.2d at 172. One scholar has articulated the concern for such evidence as follows:

> The natural and inevitable tendency of a tribunal—whether judge or jury—is to give excessive weight to the vicious record of crime thus exhibited, and either to allow it to bear too strongly on the present charge, or to take the proof of it as justifying a condemnation irrespective of guilt of the present charge.

1 Wigmore, Evidence [3d ed.] §§ 193, 194 (quoted in *Spreigl,* 272 Minn. at 495–96, 139 N.W.2d at 172).

■ Buhl argues the prior burglary conviction is not relevant to this case, because, he asserts, there is insufficient similarity between that crime and this.

■ In determining relevancy of prior crimes, courts examine the similarity of the prior crime to the present one. *Norris,* 428 N.W.2d at 69. The prior crime must be "similar in some way—either in time, place, or modus operandi—to the charged crime." *Id.* The prior and present crimes need not be identical "signature" crimes or be absolutely similar. *DeWald,* 464 N.W.2d at 503.

The admission of *Spreigl* evidence has been upheld in many cases. *See e.g., Moorman,* 505 N.W.2d at 601; *State v. Landin,* 472 N.W.2d 854, 860 (Minn.1991); *DeWald,* 464 N.W.2d at 504; *State v. Slowinski,* 450 N.W.2d 107, 114–15 (Minn.1990); *Norris,* 428 N.W.2d at 69; *State v. Crocker,* 409 N.W.2d 840, 843–44 (Minn.1987); *State v. Kumpula,* 355 N.W.2d 697, 702–03 (Minn.1984); *Seelye v. State,* 429 N.W.2d 669, 671 (Minn.App.

1988). An examination of these cases demonstrates that the similarity between the prior crime and the present one need not be great. In *Seelye,* for example, we found sufficient similarity in that the modus operandi included a break-in at a residence, an assault, and a search for drugs and money. *Id.*

Nonetheless, there must be some similarity between the prior and present crimes. In a few cases, we have found error in the trial court's admission of prior crime evidence because of insufficient similarity between the prior crime and the present one.

For example, in *State v. Kilker,* 400 N.W.2d 450, 452 (Minn.App.1987), we found error in the admission of prior incidents because, unlike the present offense, none of the seven prior incidents involved a weapon or constituted more than a misdemeanor offense. The defendant, a retarded woman, had been charged with assault with a weapon against individuals walking on the sidewalk in front of her house. The prior incidents were defendant's attempts to prevent people from walking on the sidewalk in front of her home. We commented that while this evidence was relevant to the general problem between defendant and the adolescents in the community, it was not so relevant to the assault as to outweigh its prejudicial effect. *Id.* at 453.

In another case, we reversed because of insufficient similarity between a prior robbery and the present one. *State v. Perez,* 397 N.W.2d 916, 919 (Minn.App.1986). In *Perez,* the prior conviction was for robbery which the defendant committed while escaping in a car driven by an accomplice. *Id.* at 920. In the present crime, occurring nine years later, the defendant's role, if any, was as the driver of the get-away car, not as the gunman or robber. *Id.*

The similarities between the prior burglary and this offense are few. In both crimes, a man broke into a building through a window and stole property. Both crimes occurred in Anoka County and within a relatively short period of time, given that Buhl was in prison for much of the intervening period. *See State v. Filippi,* 335 N.W.2d 739, 743–44

(Minn.1983) (holding that passage of time between offenses is insignificant if defendant was in prison and incapacitated during the intervening period).

The dissimilarities are many. The first offense occurred at a home; the present one, at a business. The first offense occurred in the afternoon; this one in the early morning. Buhl did not cover his face in the first offense, but the robber in the present offense wore a bandanna covering much of his face. In the first offense, there is no evidence that Buhl brandished or carried a weapon; the robber in this incident not only carried, but fired a gun. In the first offense, Buhl fled when he saw the woman; here, the robber physically assaulted those present and attempted to assault a woman sexually.

The state argues that under *Seelye*, there is sufficient similarity between this offense and the prior conviction. In *Seelye*, 429 N.W.2d at 671, however, the similarities between the two offenses were greater than in this case: there was a break-in at a residence, an assault, and a search for drugs and money. Here the only similarities are a break-in and theft in the same county. We conclude, therefore, that evidence of the prior conviction is insufficiently similar, and therefore not relevant to the present offense.

We also conclude that the prejudicial effect of this evidence outweighed its probative value. *See Norris*, 428 N.W.2d at 69 (probative value of *Spreigl* evidence must outweigh its prejudicial effect). Because the prior crime is substantially dissimilar to the present one, the probative value of the prior crime evidence is minimal. The manner in which the evidence was presented further weakened the probative value of this evidence. The prosecutor informed the jury that Buhl had a prior conviction for burglary but she gave the jury no other details of the prior crime. The jury thus was left with the knowledge of Buhl's prior conviction but without any details from which the jury could compare the two crimes to determine whether they were similar and, therefore, whether that conviction advanced the state's charge that Buhl committed the present crime. This manner of presenting the prior conviction evidence was highly prejudicial because it minimized any probative value of the evidence without giving the jury a chance to judge its applicability.

The state, citing *State v. Crocker*, 409 N.W.2d 840, 844 (Minn.1987), argues that defendant waived the right to challenge this issue because defense counsel failed to object to the manner of introducing this evidence at trial. In *Crocker*, the defendant was charged with rape. The state presented evidence of three prior incidents involving defendant's sexual misconduct with vulnerable young women. *Id.* at 843. Two of the incidents were presented through witness testimony; one, evidence of lewd conduct with a seven-year-old, was presented in the form of a certified copy of the conviction. The supreme court held that use of the certified copy of a conviction to prove the conviction for lewd conduct was proper, "particularly given the defendant's lack of objection." *Id.* at 844.

*Crocker* is distinguishable in several ways. In *Crocker*, the mere fact of defendant's conviction for lewd conduct with a seven-year-old, in conjunction with evidence of other incidents of sexual misconduct, was sufficient to establish a pattern of sexual misconduct with vulnerable young women. Further detail of the crime was unnecessary. Here, on the other hand, the mere fact of conviction did not establish a pattern. The conviction did not reveal the facts concerning the prior burglary which are relevant to the present one. Additionally, the defense counsel in *Crocker* had expressly said "no objection" when the prosecutor submitted papers regarding the conviction and therefore expressly waived the right to object to this issue. *Id.* at 843. Here, defense counsel objected to the *Spreigl* evidence, submitted a memorandum in opposition, and argued that with identification testimony of two eyewitnesses, his fingerprint on the duct tape, the pants found with his name on the laundry mark and the gun traced to a home in which he stayed until a few days before the crime, the burglary conviction was unnecessary to show identification.

Finally, admission of the prior conviction is not harmless error. To conclude that admission of *Spreigl* evidence was harmless error,

this court must hold that the defendant's guilt was "conclusively proven." *Perez*, 397 N.W.2d at 920. A conviction based on circumstantial evidence is conclusive of guilt only when the reasonable inferences are consistent only with the defendant's guilt. *Id.* at 921. Defense counsel asserted at trial that Buhl had been framed and that evidence found on a golf course linking him to the burglary was planted. This is at least one possible inference not consistent with defendant's guilt. Therefore, admission of this evidence cannot be termed harmless error.

We note furthermore that the state, on appeal, takes two inconsistent positions. The state first argues that the *Spreigl* evidence was properly admitted only after the trial court determined that this evidence was crucial to the state's case. *Spreigl* evidence is to be admitted only when the prosecution demonstrates that, because the case against the defendant is weak, the evidence is necessary to strengthen the state's case. *Norris*, 428 N.W.2d at 69. The state cited Niemi's testimony, which strongly supported the defendant. Niemi testified that Buhl was sleeping in the same room as Niemi's son, when he went to wake them the morning of the burglary. The trial court admitted the *Spreigl* evidence only after hearing all the other evidence in the state's case and, apparently, after determining that the *Spreigl* evidence was indeed necessary to strengthen the state's case. The state also argues that admission of the *Spreigl* incident was harmless error, because, as stated in their brief, "evidence of Defendant's guilt was overwhelming." If, indeed, evidence of Buhl's guilt was "overwhelming," then the *Spreigl* incident need not have been admitted at all. The state cannot have it both ways.

Assuming that the *Spreigl* incident was indeed necessary to strengthen the state's case, we conclude that its erroneous admission was not harmless error. We reverse and remand for a new trial without admission of the *Spreigl* evidence.

## II.

Buhl also challenges the trial court's decision to sentence him separately for motor vehicle theft. Eyewitnesses linked the motor vehicle theft to the robber. Buhl's conviction for motor vehicle theft thus depended on his conviction for the robbery. Because we reverse the robbery conviction, we must reverse and vacate the motor vehicle conviction also.

Nonetheless, we briefly consider Buhl's challenge to the separate sentence for this offense.

A person whose conduct constitutes more than one offense may be punished for only one of the offenses. Minn.Stat. § 609.035 (1992). Courts examine the facts and circumstances of each particular case to determine whether the two offenses are part of a single behavioral incident. *State v. Hawkins*, 511 N.W.2d 9, 13 (Minn.1994).

The facts of this case are analogous to *Effinger v. State*, 380 N.W.2d 483, 489 (Minn. 1986). In *Effinger*, the defendant and his brother robbed and tried to kill a cab driver. *Id.* at 484. They left the driver at the side of the road and drove off in the cab. *Id.* The trial court found that the unauthorized use of the cab was a separate offense because theft of the cab was an "afterthought," not part of the original plan to rob the driver. *Id.* at 489. The robber here, after leaving the store, found Marinac's car idling with the key in its ignition and, as an "afterthought," drove away in the car. Under *Effinger*, the robber can be sentenced separately for this offense.

## DECISION

We reverse Buhl's convictions for four counts of aggravated robbery, two counts of attempted criminal sexual conduct in the second degree, one count of assault in the second degree, four counts of kidnapping, and one count of motor vehicle theft, because of the erroneous admission of his prior 1990 burglary conviction as *Spreigl* evidence, and remand for a new trial on all charges.

**Reversed and remanded.**