**Kye Lamar POWELL, petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

Nos. C8–96–1699, C0–96–1700.

Court of Appeals of Minnesota.

April 15, 1997.

Certiorari Granted July 10, 1997.

John M. Stuart, State Public Defender, Ann Brom McCaughan, Assistant State Public Defender, Minneapolis, for Appellant.

Hubert H. Humphrey, III, Attorney General, St. Paul, for Respondent.

Michael O. Freeman, Hennepin County Attorney, Jean E. Burdorf, Assistant County Attorney, Minneapolis, for Respondent.

Considered and decided by KLAPHAKE, P.J., RANDALL and FOLEY, JJ.

## OPINION

DANIEL F. FOLEY, Judge.[*]

Appellant Kye Lamar Powell challenges the juvenile and trial courts' decisions denying him postconviction relief based upon his claims (1) of ineffective assistance of counsel and (2) that he was improperly certified to stand trial as an adult. We affirm in part, reverse in part, and remand for a new trial.

## FACTS

On May 7, 1994, 64–year–old James Cloud Morgan was severely beaten and left lying unconscious on the ground. He later died at the hospital of a perforated liver resulting from the beating. Fifteen-year-old Kye Lamar Powell, along with three other boys close to his age, began the altercation with Morgan and two of Morgan's companions. The altercation allegedly began after Morgan or one of his companions called the boys a racially derogatory epithet.

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

Eyewitnesses to the altercation told police where to find one of the boys. That boy told the police what happened. The witnesses also told the police that they remembered the person who beat Morgan by his height, weight, skin coloration, and/or the plaid flannel shirt he wore.

Powell heard that the police were looking for him and the other boys. He retained the services of attorney A. Demetrius Clemons and turned himself in to the police. He was wearing a plaid flannel shirt and his booking photograph was taken in that shirt. One of the other three boys involved also wore a plaid flannel shirt when he turned himself in and his booking photograph was also taken in that shirt.

The police created a photo line-up of 20 pictures. All four boys involved in the incident were included. From the photo line-up, each of the three eyewitnesses identified Powell as the person who beat Morgan.

On May 11, 1994, all four boys were charged by juvenile petition with murder in the second degree. The state moved for adult reference for all four. Subsequently, the other three boys pled guilty to second-degree riot and were not certified as adults. The court ordered an adult reference study and a psychological evaluation of Powell. Powell was held in a detention facility pending trial.

On August 15, 1994, the juvenile court held an adult reference hearing for Powell. It considered the reference study, psychological evaluation, detention center logs from Powell's behavior therein, and police reports of Powell's contacts with the Minneapolis Police Department. The psychological evaluation included information that Powell's

[i]ntellectual assessment * * * places him in the Borderline range of intellectual functioning * * * at the 5th percentile in-

dicating that 95% of other adolescents his age would score above him."[1]

The evaluation also noted Powell had a full-scale IQ score of 75. Clemons did not offer any further evidence of Powell's mental capacity. Nor did he offer testimony or documentary evidence on Powell's behalf. Clemons cross-examined witnesses and argued against the admissibility of documents. On August 24, 1994, the juvenile court concluded that (1) Powell was "not amenable to treatment in the juvenile system" and (2) the public safety would not be served by retaining him in the juvenile system. The court granted the state's motion for adult reference.

Clemons claims he advised Powell and his grandmother, with whom he resided, of Powell's right to appeal the adult certification order. Clemons asserts Powell decided to forego appellate review. Powell contends that Clemons never informed him that he could appeal the adult certification and, moreover, told him he would "be better off in adult court." No appeal of the adult certification was made.

On August 25, 1994, the state filed a criminal complaint charging Powell with aiding and abetting second-degree felony murder. Around the time of the pretrial conference on November 7, 1994, the state conveyed a plea offer to Clemons of approximately 78 months. Clemons claims he thoroughly explained this plea offer to Powell and informed Powell's grandmother of the offer. Clemons asserts that Powell did not want to enter a guilty plea. Powell testified that Clemons never told him about the plea offer. Powell also contends that his grandmother was in a coma during this period and, thus, Clemons could not have informed her.

On November 14, 1994, the trial court heard Powell's motion to suppress the photo line-up. Clemons did not make an argument

---

1. The trial court found in its postconviction relief order that

> Petitioner's education level, mental abilities or alleged 'impaired intellectual capacities' were never raised. * * * The Court observed and spoke to Petitioner and explained to him his right to remain silent or to testify. There was never any indication of diminished capacity or lack of understanding.

However, the court did have indication of Powell's diminished capacity because the record included the court ordered a psychological evaluation, which included Powell's full scale IQ score of 75 and the information regarding his borderline intellectual functioning.

on behalf of the motion and did not present any evidence, but did cross-examine the state's witnesses. The court denied the motion to suppress.

During a break in voir dire, the state conveyed a second plea offer of approximately 64 months to Clemons at the counsel table. Powell was sitting at the counsel table at the time. Two prosecutors submitted affidavits that Clemons communicated the offer to Powell in their presence and Powell rejected the offer. Clemons claims that he thoroughly explained this offer to Powell and his grandmother. Powell asserts that (1) Clemons never explained any plea offer made, (2) he [Powell] never understood that he was offered a plea until the postconviction relief proceedings, and (3) discussion of the offer with his grandmother would still have been impossible because she remained in a coma.

At trial, the state presented testimony from two of the other boys present that they witnessed Powell punching and kicking Morgan. The state also called the three eyewitnesses and each testified that Powell injured Morgan. Two of the eyewitnesses did not identify Powell as having worn a plaid flannel shirt the night of the incident, but rather by his physical characteristics.

Clemons' case consisted of two witnesses. Powell testified that he never touched Morgan and that one of the other boys, who had been wearing a plaid shirt the night of the incident, kicked and punched Morgan. Additionally, Clemons introduced impeachment testimony from a teacher who claimed he heard a conversation between Powell and one of the other boys who was present the night of the incident in which the other boy told Powell that he only told police that Powell kicked and punched Morgan because he heard that Powell had "told on" the boys. Clemons did not introduce any other witnesses or evidence. The jury found Powell guilty.

Powell claims Clemons told him that, because of his age, the decision would be automatically appealed. Clemons took no further

action on Powell's case. Eventually, Powell contacted the public defender's office. The public defender brought an appeal which was dismissed to allow for postconviction proceedings. The trial court concluded that

> Clemons' ongoing law practice and the demands upon him professionally and personally were not raised and were not apparent at the time of these proceedings. Clemons appeared prepared, competent and diligent.[2]

By order of then-Hennepin County Chief Judge Kevin Burke, the postconviction proceedings were bifurcated. The juvenile court handled the reference to adult court claims and the trial court considered the trial issues. Both the trial and juvenile courts denied postconviction relief. These consolidated appeals followed.

## ISSUES

I. Did the trial court err by denying Powell postconviction relief based on ineffective assistance of counsel?

II. Did the juvenile court err by denying postconviction relief after it certified Powell to stand trial as an adult?

## ANALYSIS

### I. Ineffective Assistance of Counsel

This court conducts a two-pronged inquiry to resolve claims alleging ineffective assistance of counsel. To be entitled to relief for ineffective assistance of counsel, the appellant must first affirmatively prove that his counsel's representation "fell below an objective standard of reasonableness." *Gates v. State*, 398 N.W.2d 558, 561 (Minn.1987) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1984)). Second, appellant must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.; see James v. State of Iowa*, 100 F.3d 586, 589 (8th Cir.1996) (citing *Strickland*, 466 U.S. at 686, 104 S.Ct. at

---

2. From October 1994 through Powell's trial, A. Demetrius Clemons was defending himself against a weapons violation charge and various charges of prostitution. After Powell's trial, on April 21, 1995, Clemons was reprimanded for failing to communicate with clients. His license was suspended.

2063–64) (defendant must show defense provided to defendant was prejudiced by counsel's deficiencies).

First, Powell asserts that Clemons breached his duty to act according to the standard of an objectively reasonable attorney by failing to take necessary precautions to ensure that Powell understood his rights and the legal ramifications of the two plea offers. Powell argues his age and low comprehension level relative to other children of his age necessitated that Clemons take additional documented precautions. Powell contends that he was prejudiced because if Clemons had explained the plea offers and the fact that, with an *Alford* plea, Powell could have maintained his innocence, Powell may have chosen to take the plea and would have obtained a 64–month rather than a 150–month prison term.

■■■ The trial court found that Clemons did communicate the first plea offer to Powell. "In the alternative," the trial court held, "if the first plea offer was not communicated, the second and more advantageous plea offer was communicated." The trial court opined that Powell would not have accepted any plea agreement because he maintained and maintains his innocence, and "[i]t is pure speculation on the part of Petitioner that the Court would accept an *Alford* plea under these circumstances * * *." [3] The court concluded that Clemons provided effective assistance of counsel in communicating the state's plea offers to Powell. We disagree.

■■■ Once the attorney-client relationship has been formulated, the attorney cannot abdicate his responsibility. A 15 year old being tried in adult court, having been charged with commission of a violent crime resulting in death, can hardly be said to have made an informed decision concerning a possible plea of guilty and a sentence of 64 months incarceration when the offer is relayed in a fleeting communication for a few seconds at counsel table. There was no request for a recess by trial counsel or a continuance for the attorney and his client to discuss the offer in the privacy of a confidential environment away from the courtroom, out of the hearing of prosecuting attorneys and others. Administrative measures to move cases speedily through the judicial process, however much desired with a mounting case load, do not lessen the obligation of the attorney to represent his client effectively and protect his rights. Nor should the amount of financial remuneration ever be a measure of the attorney's obligation or performance of his/her duty in serving the client.

Many people do not understand legal proceedings or the judicial process. A minor being tried as an adult is ordinarily less equipped intellectually than an adult to cope with the pressure of a trial, much less to make a difficult decision affecting his personal liberty, such as in pleading guilty to a charge carrying a plea incarceration of 64 months. In a matter as serious as this case and with a client with limited comprehension skills, it would seem that after a full discussion of the offer and a clear understanding by the client of what it meant, a record should have been made, not necessarily before the court, but at least a discussion preserved, so that if the question of informed decision was raised, as here, the advice of counsel would be available for a postconviction or appellate court to review.

■■■ Defense counsel is obliged to serve the accused as his counselor and advocate with the courage, devotion and to the utmost

---

**3.** Minnesota courts have adopted the rules regarding Alford pleas that were established in *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). *See State v. Goulette*, 258 N.W.2d 758, 760 (Minn.1977). Under an *Alford* plea, a defendant may plead guilty to an offense, even though the defendant maintains his or her innocence, if (1) the defendant reasonably believes and (2) the record establishes, that the State has sufficient evidence to obtain a conviction. *State v. Ecker*, 524 N.W.2d 712, 716 (Minn.1994) (citing *North Carolina v. Alford*, 400

U.S. 25, 37, 91 S.Ct. 160, 167, 27 L.Ed.2d 162 (1970). The court must only determine whether an adequate factual basis has been established in the record that the evidence against the defendant is sufficient that a high probability of conviction exists. *Id.* (citing *State v. Milton*, 295 N.W.2d 94, 95 (Minn.1980)). The court would have had cause to believe there was a high probability of conviction. If Powell understood the weight of the evidence, it appears from the record that an *Alford* plea may have been an option.

of his learning and ability in order to protect against any conviction * * *.

*State v. Williams,* 297 Minn. 76, 85, 210 N.W.2d 21, 26 (1973) (citation omitted). Stemming from this obligation, the duty of an attorney, whether privately retained or appointed by the court, is the same: to protect the rights of the accused (here, a minor of 15 years of age); to investigate properly and thoroughly prepare for trial; to keep in frequent touch with the client who has placed trust and confidence in the attorney; and to counsel and advise the client in all the critical aspects of the case, which the attorney knows or should know are of importance to the client's cause and which are necessary to a full understanding by the client of his case and the ramifications of decisions made by him. Only when these duties of counsel are fulfilled does a defendant truly receive Sixth Amendment protection, guaranteeing the kind of effective representation that the client has a right to expect and the advocate has a duty to provide. We reiterate, these duties are even greater when the client is a minor and has a limited mental capacity. By failing to (1) investigate Powell's case fully (including preparation and pretrial review of witnesses to be called and their expected testimony), (2) keep in contact with Powell, and (3) advise Powell regarding the legal procedures he was encountering, Clemons's performance fell below the standard of general care objectively reasonable under the circumstances.

█ Moreover, a criminal defendant has the exclusive right to accept or deny a plea offer. *State v. Moore,* 458 N.W.2d 90, 96 (Minn.1990). Advising a defendant of a plea offer consists of more than communicating that the offer exists; rather it requires taking necessary measures to ensure that the defendant understands the implications and possible impact of accepting or declining the offer. Defense counsel is obliged to serve the accused as a counselor and advocate to the utmost of counsel's ability. *Williams,*

297 Minn. at 80, 210 N.W.2d at 26. This includes taking additional precautions where necessary to ensure that an explanation has been understood.[4] Clemons failed to show that he took appropriate steps to inform Powell of the legal procedures and effects of the plea offers. A few seconds conveyance of a plea offer in the presence of prosecuting attorneys is insufficient to explain adequately what was necessary to enable Powell to make an informed decision and invades the private attorney-client relationship.

We conclude that Powell's legal counsel acted below a standard of objective reasonableness because he did not take the necessary added precautions that a reasonably prudent attorney should when representing a minor client with limited comprehension skills. Additionally, we deduce that Powell's defense was prejudiced by the ineffective assistance of counsel he received because Powell was effectually deprived the right to opt for a shorter term of incarceration. We reverse the trial court's denial of the ineffective assistance of counsel claim because of counsel's failure to apprise Powell adequately of his rights.

█ Powell also asserts that the photo line-up and the in-court witness identifications of Powell would have been excluded if it were not for Clemons's negligence. Powell contends that the exclusion of this evidence would have changed the outcome of his case because there would not have been corroborating evidence to verify the testimony of the accomplices. However, regardless of the admissibility of the photo line-up, a subsequent in-court identification is permissible if the in-court identification has "an adequate independent origin so as to negate or reduce the likelihood of misidentification." *Seelye v. State,* 429 N.W.2d 669, 672 (Minn.App.1988) (quoting *Neil v. Biggers,* 409 U.S. 188, 196, 93 S.Ct. 375, 380–81, 34 L.Ed.2d 401 (1972)). Regardless of whether the photo line-up was impermissibly suggestive, the in-court wit-

---

4. Effective representation of Powell would also necessitate that Clemons raise the issue of Powell's intellectual capacity to the court so the court would afford Clemons more time to explain things to his client and take more time itself to ensure that Powell understood the rights and legal procedures that the court itself explained. Clemons's failure to raise the issue of Powell's diminished capacity additionally shows that Clemons's representation fell below the level of objective reasonableness in these circumstances.

ness identifications of Powell had an adequate independent source. Thus, the in-court identifications substantiated the accomplice's testimony. Clemons's representation related to the photo line-up did not prejudice the outcome of the case.

## II. Certification for Adult Proceeding

■ Powell claims he did not receive effective representation with regard to his adult certification proceedings. He asserts Clemons failed to (1) file for removal of the juvenile court judge in order to seek "dual jurisdiction,"[5] (2) conduct any investigation in preparation for the reference hearing, (3) notify Powell of his right to appeal the adult certification decision, (4) appeal the reference determination, and (5) inform Powell correctly that being certified as an adult would not function to his advantage. Powell asserts that these acts of negligence resulted in prejudice because there was a probability that his conviction would not have been as lengthy if Clemons had acted with an ordinary degree of competence in defending against and appealing the adult certification.

> Minn.Stat. § 260.125, subd. 2, provides in pertinent part: "The juvenile court may order a reference only if * * * (d) [t]he court finds that the child is not suitable to treatment or that the public safety is not served under the provisions of laws relating to juvenile courts." Thus, if the court finds either nonamenability to treatment or a threat to public safety it may refer the juvenile for adult prosecution. The juvenile court is vested with broad discretion in determining whether either of the statutory criteria exists upon which to base its reference decision, * * * and its findings will not be disturbed on appeal unless they are "clearly erroneous."

*In re Welfare of K.P. H.*, 289 N.W.2d 722, 724 (Minn.1980) (citations omitted).[6]

■ In the postconviction proceedings, the juvenile court found that Powell had not

shown that, but for Clemons's action, the outcome of his case would have been any different. Sufficient evidence existed to justify the juvenile court's decision to grant adult certification. The juvenile court decided to deny postconviction relief because of the probation officer's testimony that there was insufficient time to control Powell's behavior and the psychologist's testimony that there must be some role of the adult court to protect the public safety. This testimony was sufficient to grant the adult reference regardless of Clemons's actions. In addition, the juvenile court knew that Powell's history included convictions for truancy and a gross misdemeanor, pending charges for fifth-degree assault, felony damage to property, trespass, and disorderly conduct and an uncharged incident in which Powell assaulted another student with a badminton racket, breaking the child's teeth. Because there was sufficient record evidence for the juvenile court to have concluded that Powell's behavior may not be treatable, and if his behavior did not improve he would be a danger to the public safety, the postconviction juvenile court did not err by concluding that Clemons's actions regarding adult certification did not prejudice Powell.

## DECISION

Because we hold that Powell was not adequately represented by trial counsel, a new trial is mandated. The certification of Powell to stand trial as an adult is affirmed.

**Affirmed in part, reversed in part, and remanded.**

---

5. Dual jurisdiction was not recognized by the laws of Minnesota at the time of Powell's adult certification hearing.

6. Minn.Stat. § 260.125, subd. 2 (1992) is substantially the same as it was when cited in *K.P.H.*

*See* Minn.Stat. § 260.125, subd. 2 (1992) (prosecuting attorney must show by clear and convincing evidence minor defendant not suitable to treatment or public safety not served).