STATE of Minnesota, Respondent,

v.

Dennis LeRoy WAKEFIELD, Appellant.

No. 48193.

Supreme Court of Minnesota.

March 16, 1979.

C. Paul Jones, Public Defender, Phebe Haugen, Spec. Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Keith M. Brownell, County Atty., John E. DeSanto, Asst. County Atty., Duluth, Mark S. Rubin, Asst. County Atty., Virginia, for respondent.

Heard before SHERAN, C. J., OTIS and KENNEDY, JJ., and considered and decided by the court en banc.

SHERAN, Chief Justice.

This is an appeal from the June, 1977, conviction of Dennis LeRoy Wakefield of criminal sexual conduct in the first degree. Wakefield claims it was reversible error for the trial court to have admitted into evidence testimony by another woman that Wakefield had raped her, when Wakefield had been acquitted of that charge after a trial in 1971. We agree and reverse.

The factual dispute at trial centered solely around whether the complaining witness consented to Wakefield's advances. Wakefield testified that on March 1, 1977, after drinking heavily most of the day, he went to work at his job as a truck driver on the 11 p. m. to 7 a. m. shift at the Hibbing Taconite Company. He discovered the steering wheel of his assigned truck was disconnected. He then looked for two foremen without success. Finally, he decided to go into the women's "dry" or locker room, where he could hide until he was sober enough to talk to his foreman. Apparently he and other employees had done this in the past. Once inside, he came upon a woman asleep on the floor. Wakefield had previously seen her just about every day at work, and she had been a member of his car pool. Wakefield woke her up, and they talked for 10 or 15 minutes. They then began to "fool around" and started to have sexual intercourse, until the woman said the foreman was calling for Wakefield. Wakefield turned out the lights so the foreman wouldn't open the door. The woman said: "Look at what you've done. Now you'll get us both fired." Wakefield then went into the men's dry and eventually out into the hall, where he was confronted by the foreman and the woman, who said he had raped her.

The testimony of the complaining witness is quite different. She testified that on March 1, 1977, she was feeling ill as she went to work at her job as a janitor on the 11 p. m. to 7 a. m. shift at the Hibbing

Taconite Company. She began work by starting to clean up the lunchroom, but felt ill and went to the women's dry because she had diarrhea and felt nauseous. She decided to lie down for a few minutes on a piece of carpeting. After about five minutes, the lights went out. Thinking there might be a fire, she jumped up to find her way out. She felt an arm, someone began to choke her, and a voice that she instantly recognized as Dennis Wakefield's said: "Don't scream, or I'll kill you." She begged him to leave her alone, but he took her clothes off, fondled her, and eventually raped her. She was terrified and feared for her own safety the whole time. She told him she didn't know who he was so that he wouldn't kill her. Her attacker told her not to turn on a light, but she was able to identify him as Dennis Wakefield in the light that filtered in as he opened the door to leave. After locking the doors and wondering what to do, she ran and reported the assault to her foreman.

At the trial, one of the state's witnesses was an alleged victim of a prior rape. She testified that at about 1:30 a. m. on April 14, 1971, she had gone for a walk near her home in Bovey, Minnesota. A car approached, and an unfamiliar person she later identified as Dennis Wakefield got out and began to walk with her. They walked and talked for about 20 minutes. He eventually struck her and dragged her away from the road and raped her twice. The police were notified, the matter went to trial, and Wakefield was acquitted.

Appellant Wakefield objected to the testimony of this prior complaining witness at trial and now presses the argument here that under no circumstances should evidence of another crime be admissible to show a likelihood that a defendant committed the offense for which he is being tried, when he was charged and acquitted of the other crime. Wakefield claims it is unfair to, in effect, force him to defend again against the charge of this witness when he has already been found not guilty after a complete trial. We find this reasoning convincing.

The general judicial hostility toward evidence of other crimes is well known and justifiable, e. g., McCormick, *Evidence*, 2nd ed., 447. There is too great a chance that the jury will punish for past crimes even if uncertain about present ones. Consequently, such evidence is admissible only if falling within carefully enumerated categories which for a particular reason have especially great probative value. Minnesota Rules of Evidence, Rule 404(b).

Yet, even when so restricted, evidence of other crimes has still troubled courts, including this one. At length in *State v. Spreigl*, 272 Minn. 488, 139 N.W.2d 167 (1965) we expressed our misgivings about this evidence and repeated that doubtful cases must be resolved in favor of excluding the evidence. In *Spreigl* and in *State v. Billstrom*, 276 Minn. 174, 149 N.W.2d 281 (1967), we established procedural safeguards designed to minimize the prejudicial impact upon the defendant.

Restricted categories and procedural safeguards, however, do not eliminate prejudice to the defendant nor free him from the necessity to defend against such evidence. We can find no justification for requiring a defendant to bear these burdens when, as here, he has been tried and acquitted of the other charge. It is true, of course, that an acquittal does not signify "innocent"; it means instead "not found guilty beyond a reasonable doubt." It may even be at times that evidence of another crime of which the defendant has been acquitted may still meet the *Billstrom* standard of being clear and convincing. Even so, it is a basic tenet of our jurisprudence that once the state has mustered its evidence against a defendant and failed, the matter is done. In the eyes of the law the acquitted defendant is to be treated as innocent and in the interests of fairness and finality made no more to answer for his alleged crime. It is our view that the admission into a trial of evidence of crimes of which the defendant has been acquitted prejudices and burdens the de-

fendant in contravention of this basic principle and is fundamentally unfair. Therefore, we conclude that under no circumstances is evidence of a crime other than that for which a defendant is on trial admissible when the defendant has been acquitted of that other offense.

The rule that we establish today is well supported not only by the reasoning expressed above but by judicial authority. Cases from many jurisdictions applying or rejecting such a rule are collected at 86 A.L.R.2d 1132. While acknowledging that our position in this matter is decidedly the minority one, we find the reasoning of the cases favoring this view persuasive. E. g., *State v. Little*, 87 Ariz. 295, 350 P.2d 756 (1960), *State v. Perkins*, 349 So.2d 161 (Fla. 1977). The federal courts generally admit such evidence, except in the Fifth Circuit. The Fifth Circuit Court of Appeals established a rule similar to ours in *Wingate v. Wainwright*, 464 F.2d 209 (1972). While emphasizing the collateral estoppel doctrine more than we think necessary to our holding, that opinion expresses sentiments reflective of our own:

> "It is fundamentally unfair and totally incongruous with our basic concepts of justice to permit the sovereign to offer proof that a defendant committed a specific crime which a jury of that sovereign has concluded he did not commit. Otherwise a person could never remove himself from the blight and suspicious aura which surround an accusation that he is guilty of a specific crime. Wingate was charged with robbing Hellman and Angel and as a result of those charges he endured the perils of trial. He was acquitted of those very charges and that should end the matter." 464 F.2d 215.

The state contends that the single Minnesota authority on this issue compels a different result. In *State v. Lucken*, 129 Minn. 402, 152 N.W. 769 (1915), the defendant had been convicted of passing a forged check. The trial court had admitted testimony that the defendant had passed other forged checks, even though the defendant claimed he had been acquitted of two of these other crimes. In an alternative holding, this court affirmed because there was no proof of the acquittals and because the law did not require the exclusion of the evidence. It is true that *Lucken* is often cited as authority for a rule to the contrary of that established herein. However, the lack of proof of the prior acquittals distinguishes *Lucken* from the instant case and casts doubt on the validity of the state's contention. Nevertheless, to the extent that *Lucken* holds otherwise than we do here, it is overruled.

Applying this rule to the instant case, it was error to admit the testimony from the alleged prior victim. The remaining issue, whether such error was harmless, is readily resolved. A case of this nature is basically one word against another; force versus consent. The only evidence corroborating a forcible rape were some red marks on the complaining witness's neck. The parties try to characterize the actions and demeanor of Wakefield and the woman after the incident in different ways in order to bolster the direct testimony, but the attempt is inconclusive. The explicit testimony of the prior rape must have been very damaging to Wakefield in the eyes of a jury probably searching for a way to resolve otherwise balanced evidence. Since Wakefield was seriously prejudiced by improperly admitted evidence, a new trial from which such evidence will be excluded is mandated.

Reversed and remanded.