**STATE of Minnesota, Respondent,**

v.

**Nathaniel Lee BURTON, Appellant.**

**No. 48377.**

Supreme Court of Minnesota.

June 22, 1979.

C. Paul Jones, Public Defender, Kathleen Kelly and Michael F. Cromett, Asst. Public Defenders, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Gary W. Flakne, County Atty., Vernon E.

Bergstrom, Chief, Appellate Division, and David W. Larson, Asst. County Atty., Minneapolis, for respondent.

Heard before SHERAN, C. J., and OTIS and KENNEDY, JJ., and considered and decided by the court en banc.

### CHARLES W. KENNEDY, Justice.*

A jury found defendant Nathaniel Lee Burton guilty of simple robbery in violation of Minn.St. 609.24 and of theft in violation of Minn.St. 609.52, subds. 2(1) and 3(2). He was sentenced to imprisonment for up to 10 years on the robbery conviction. He appeals from the judgment. Because evidence was received of an alleged prior offense by defendant of which he had been acquitted, we reverse and grant a new trial.

The state contended that defendant robbed Thomas Shafer and Gary Solberg in their two-story Minneapolis apartment. Shafer testified that at about 2:15 a. m. on November 20, 1976, after extensive drinking, he was sitting at the counter of a downtown Minneapolis restaurant when defendant, a stranger, sat down beside him. They talked for about 45 minutes. Defendant made a homosexual proposition to Shafer. The talk turned to drinking. Eventually Shafer invited defendant to his apartment for a drink and the two drove there in Shafer's green Gremlin car. When they reached the apartment defendant pulled a gun, ordered Shafer upstairs, tied his arms and legs with scarfs, pointed the gun at him, and demanded money. When told there was no money in the apartment, defendant threatened to kill Shafer. Shafer's roommate, Gary Solberg, then entered the apartment.

Solberg testified that defendant threatened him with a silver-colored weapon, told him to lie down on the floor, tied him, and demanded money. Solberg told defendant there was no money. Defendant went downstairs in the apartment, used a telephone, returned upstairs, asked where the car keys were, and ripped out the upstairs telephone cord. He then left the apartment.

Upon defendant's departure, Shafer untied himself and called police from the downstairs telephone. Missing from the apartment were Solberg's television set and stereo, Solberg's keys, Shafer's car keys, and $2 which Shafer said he had placed on a buffet when he entered the apartment with defendant.

Within a few minutes two police officers apprehended defendant driving Shafer's Gremlin in the apartment parking lot with the headlights off. In the rear seat of the car were the stereo and television set. On defendant's person the officers found a silver-plated unloaded starter pistol, Solberg's keys, and some money. When an officer took the money from defendant's trouser pocket, defendant said: "That's my money. I did not take it from them."

Over defense counsel's objection, the trial court permitted the state to introduce the testimony of Douglas Olson in its case-in-chief for, as the court told the jury, "the limited purpose of establishing a common scheme or plan, method of operation and criminal intent." Douglas Olson then testified that about 6 weeks before November 20, 1976, he met defendant in the early morning at a diner in St. Paul. After some talk Olson agreed to drive defendant home. They drove around, discussed women, drank beer, and, as Olson started to drive from an after-hours beer place to the freeway, defendant put a knife to his ribs and demanded money, obtaining some $40 from Olson. For this alleged conduct, defendant was charged in Ramsey County with robbery, was tried, and acquitted.

Defendant did not testify at trial. Defense counsel relied mainly upon attacking the credibility of Shafer and Solberg through the use of Shafer's prior inconsistent statement to police. Shafer originally informed the police that he had found defendant in the apartment when he returned

---

* Acting as Justice of the Supreme Court by appointment pursuant to Minn.Const. art. 6, § 2, and Minn.St. 2.724, subd. 2.

home.[1] Solberg knew that Shafer was giving that information to police. At trial Shafer testified that he gave a false account to police at first because he was afraid that if he told the truth, his parents would learn that he is gay.

1. Defendant contends that the admission of Olson's testimony was reversible error. We agree.

In deciding to admit Olson's testimony, the trial court did not have the benefit of this court's recent ruling in *State v. Wakefield*, 278 N.W.2d 307 (Minn.1979). There we held on grounds of fundamental fairness that "under no circumstances is evidence of a crime other than that for which a defendant is on trial admissible when the defendant has been acquitted of that other offense." 278 N.W.2d 309. Thus it was error to permit the Olson testimony to be received. Under the circumstances of this case, the error cannot be considered harmless.

To convict of simple robbery the jury had to find beyond a reasonable doubt that defendant violated Minn.St. 609.24, which provides in part:

"Whoever, knowing he is not entitled thereto, takes personal property from the person or in the presence of another and uses or threatens the imminent use of force against any person to overcome his resistance or powers of resistance to, or to compel acquiescence in, the taking or carrying away of the property is guilty of robbery * * *."

The trial court instructed the jury accordingly. The testimony of Shafer and Solberg to the effect that defendant had removed the car keys, apartment keys, money, television set and stereo from the apartment and that he had a silver-plated pistol was corroborated by the testimony of the two police officers who found defendant in the car with those items. But crucial parts of the alleged offense of robbery were the actions of defendant both while he and Shafer were alone in the apartment and after Solberg returned, and the effect of defendant's behavior on Shafer and Solberg. As to those elements, there was only the uncorroborated testimony of Shafer and Solberg. Their credibility was an important issue, and there were impeaching factors. It is evident from the state's argument to the jury and to this court that the state wanted to use Olson's testimony to support the credibility of Shafer and Solberg. The state argued to the jury that the Olson testimony was corroboration and dwelt at length on claimed similarities between the alleged St. Paul conduct and defendant's alleged conduct in the case on trial. Addressing the jury, the prosecutor said:

"When taken in total, those corroborating facts, ladies and gentlemen, point only to one conclusion: Mr. Burton was committing a robbery at the Cedars-West apartments on the morning of November 20th."

And on appeal, the state argues that:

" * * * The Spreigl evidence rehabilitated Schafer [Shafer] by supporting the new version of events he told at trial.

\*       \*       \*       \*       .\*       \*

" * * * The evidence was admitted to support elements of the State's case which were impeached through the use of a prior false statement by the prosecution's star witness."

In these circumstances, the testimony concerning defendant's alleged prior criminal conduct could have had a substantial effect upon the jury's decision as to what took place within the apartment. The error in admitting such testimony was prejudi-

---

1. Officer Jeffrey Hoberg wrote in his offense report:

"Victim stated that upon arrival home defendant was waiting for them in the apartment. He pulled a gun on the victims and tied both victims up in the bedroom. The loss was taken from the living room."

On November 22, 1976, a complaint charged defendant with burglary of a dwelling with assault in violation of Minn.St. 609.58, subd. 2(1)(b), as well as the robbery and theft for which he was tried. On February 10, 1977, the charge of burglary of a dwelling with assault was dismissed following Shafer's partial retraction of his statement to the police.

cial, and defendant is entitled to a new trial.

2. Because we hold that Olson's testimony cannot be received, there is no occasion to rule on the contention that evidence of prior criminal conduct may not be received until the trial court has determined that the evidence of such conduct is clear and convincing.

Reversed and new trial granted.

ROGOSHESKE, J., took no part in the consideration or decision of this case.