STATE of Minnesota, Respondent,

v.

Thomas E. O'MEARA, Appellant.

No. A07–0825.

Court of Appeals of Minnesota.

Aug. 26, 2008.

Lawrence Hammerling, Chief Appellate Public Defender, St. Paul, MN; and Charles F. Clippert, Special Assistant State Public Defender, Minneapolis, MN, for Appellant.

Lori Swanson, Attorney General, St. Paul, MN; and Brian Melton, Clay County Attorney, Pamela Harris, Assistant County Attorney, Moorhead, MN, for Respondent.

Considered and decided by KLAPHAKE, Presiding Judge; MINGE, Judge; and HUSPENI, Judge.

## OPINION

HUSPENI, Judge.*

In this appeal from his convictions of pattern of harassing conduct, harassment,

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

multiple violations of a harassment restraining order, and falsely reporting a crime, appellant challenges his convictions and sentence. We affirm.

## FACTS

Appellant Thomas O'Meara and R.O. were married in 1999. They separated in September 2003, and O'Meara moved out of the home they had shared. On March 1, 2006, R.O. obtained a harassment restraining order that prohibited O'Meara from harassing R.O. or having any contact with her, directly or indirectly. The order also required that O'Meara "stay away" from both R.O.'s residence and her place of employment. Although the restraining order did not prohibit contact with the couple's children, it mandated exchanges for parenting time through an organization called Rainbow Bridge.

A decree dissolving the parties' marriage was issued on June 12, 2006. During the following month, O'Meara repeatedly contacted R.O. in person, by telephone and e-mail, and indirectly, by relaying messages and requests through others.

On June 21, 2006, O'Meara reported to police that a male friend of R.O. had sexually assaulted their four-year-old daughter. R.O.'s friend was staying at her residence that evening, and responding officers interviewed both R.O. and her friend. Concluding that the report was unsubstantiated, the officers left without taking any further action. Later that night, R.O. received a telephone call from a taxicab company asking whether she was ready for her cab. She had not requested one.

On June 23, 2006, R.O. received a telephone call from the children's daycare provider, notifying her that O'Meara was planning to pick up the children. R.O. advised the provider that a restraining order required all parenting-time exchanges to be made through Rainbow Bridge.

The next day, R.O. was grocery shopping when O'Meara came into the store with the children. He repeatedly attempted to talk to R.O. and followed her throughout the store. R.O. then confronted him about his report to the police, and he replied, "I saw [R.O.'s friend] in my living room, what was I supposed to do?" O'Meara's response frightened R.O. because she inferred that he had been looking through her windows.

On June 26, 2006, R.O. received a telephone call from a friend of O'Meara who was calling on behalf of O'Meara regarding picking up some of O'Meara's possessions. The friend called R.O. two more times the next day. The first time, R.O. recognized the telephone number on her caller identification and did not answer the telephone. The second time, R.O. answered the telephone and promptly hung up when she identified the caller as O'Meara's friend.

On June 27, 2006, R.O. was driving when O'Meara approached her on his bicycle and attempted to talk to her. Later that evening, he called R.O. at home, again saying that he wanted to talk to her, but she hung up. O'Meara called two more times that evening. R.O. did not answer. O'Meara called again on June 28 and 29. And on June 29, 2006, R.O. advised the police of O'Meara's actions.

O'Meara again tried to speak with R.O. on June 30, 2006, when she was with one of their children at a park. He also called her home three times on July 1, 2006. O'Meara e-mailed R.O. once on July 5, three times on July 6, and once on July 16, 2006. And on at least two occasions during the summer of 2006, while the restraining order was in place, O'Meara sent R.O. flowers with notes referring to his "insane jealousy."

O'Meara was eventually charged with pattern of harassing conduct (Minn.Stat. § 609.749, subds. 1, 5 (2004)); harassment (Minn.Stat. § 609.749, subds.2(4), (5), 4 (2004)); four counts of violation of a harassment restraining order (Minn.Stat. § 609.748, subd. 6(c) (2004)); and falsely reporting a crime (Minn.Stat. § 609.505 (2004)). The complaint originally alleged that the charged offenses were committed during late June and early July 2006. But shortly before trial, the district court permitted the state to amend the pattern-of-harassing-conduct and harassment charges to state that the alleged conduct occurred "on or about November 3, 2004, to July 5, 2006."

The complaint also separately identifies two prior convictions—an April 2004 domestic-assault conviction and a September 2004 conviction of interference with an emergency call, arising out of an incident in which R.O. attempted to call police during a domestic altercation with O'Meara. The complaint also refers to two incidents in March 2006 involving telephone calls by O'Meara to R.O., and for which O'Meara had been charged with two counts of violating a harassment restraining order. But O'Meara was acquitted on both counts after trial in September 2006.

At his November 2006 jury trial, O'Meara stipulated to the April 2004 conviction for purposes of the five counts involving harassment and violation of a restraining order, but moved the district court to prohibit the state from introducing relationship evidence pursuant to Minn.Stat. § 634.20 (2004). The district court denied O'Meara's motion, and the state was permitted to introduce relationship evidence from the period between November 3, 2003, and the date of trial. Because of the amendment to the complaint, O'Meara also specifically requested that the state be prohibited from introducing evidence of "the prior contacts [in March 2006] which the jury said that [O'Meara] was not guilty of." The district court decided that, notwithstanding O'Meara's acquittal of charges based on the March 2006 incidents, the evidence was admissible relationship evidence. The district court also advised the parties that it would provide cautionary instructions regarding all relationship evidence.

The state presented evidence of numerous contacts between O'Meara and R.O. between November 2003 and August 2006. R.O. testified about all the incidents described above between June 12, 2006, and July 16, 2006, as well as the telephone contacts in mid-March 2006, for which O'Meara had been acquitted. R.O. also testified about the incident in November 2003, which led to O'Meara's April 2004 conviction, and the incident in June 2004, which led to the September 2004 conviction. O'Meara chose to testify and agreed that most of the contacts to which R.O. had testified did occur but disputed the nature of those contacts.

The jury found O'Meara guilty on all counts in the complaint except for one of the alleged violations of the harassment restraining order. The district court imposed stayed sentences of 28 months for pattern of harassing conduct and 21 months for harassment. The district court dismissed all four counts for violation of a restraining order and entered a conviction on the false report of a crime, but did not sentence on that offense. This appeal followed.

## ISSUES

I. Did the district court err by admitting relationship evidence pursuant to Minn.Stat. § 634.20 (2004)?

II. Did the district court erroneously instruct the jury regarding the

charge of pattern of harassing conduct?

III. Did the district court err by imposing sentences for O'Meara's conviction of pattern of harassing conduct and his conviction of harassment?

## ANALYSIS

### I.

 O'Meara argues that the district court erred by admitting relationship evidence pursuant to Minn.Stat. § 634.20 (2004). Evidentiary rulings ordinarily rest within the sound discretion of the district court. *State v. Amos,* 658 N.W.2d 201, 203 (Minn.2003). When challenging a district court's evidentiary ruling, an appellant must establish both that the district court abused its discretion and that, as a consequence, the appellant was prejudiced. *Id.*

Pursuant to Minn.Stat. § 634.20, the state may introduce evidence of the history of the relationship between a defendant and the victim of domestic abuse. *State v. McCoy,* 682 N.W.2d 153, 159 (Minn.2004). Section 634.20 provides as follows:

Evidence of similar conduct by the accused against the victim of domestic abuse, or against other family or household members, is admissible unless the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issue, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Thus, evidence of the defendant's prior conduct is admissible under section 634.20 if (1) it is similar conduct, (2) it is perpetuated against the victim of domestic abuse or against another family or household

member, and (3) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *State v. Meyer,* 749 N.W.2d 844, 849 (Minn.App. 2008).

O'Meara first argues that the district court erred by admitting relationship evidence without weighing the probative value of that evidence against the danger of unfair prejudice. While the district court did not make an express finding on probative value versus prejudicial impact, it did state: "The legislature has clearly provided that this type of evidence in romantic relationships is admissible even though it's prejudicial to a defendant." Although this comment does not clearly recite the required balancing test, it was made in the context of a discussion that was explicitly centered on weighing the probative value of this evidence against its potential for unfair prejudice. Failing to more explicitly address the balancing test on the record is not erroneous.[1] *State v. Bell,* 719 N.W.2d 635, 640–41 (Minn.2006).

 O'Meara also argues that the district court erred by admitting evidence of the two incidents occurring in March 2006 because he was acquitted of the charges arising from those incidents. Existing Minnesota caselaw does not specifically address the issue of admission of relationship evidence after a defendant has been acquitted of charges based on the similar conduct at issue. O'Meara cites *State v. Wakefield,* 278 N.W.2d 307 (Minn.1979), in support of his argument. In that case, the supreme court held that "under no circumstances is evidence of a crime other than that for which a defendant is on trial admissible when the defendant has been acquitted of that other offense." *Wakefield,*

---

1. Moreover, although O'Meara challenges the sufficiency of the district court's analysis, he does not identify any prejudice to himself resulting from the district court's allegedly insufficient analysis.

278 N.W.2d at 309. *Wakefield* involved evidence of a prior crime, admitted pursuant to Minn. R. Evid. 404(b), and *State v. Spreigl*, 272 Minn. 488, 139 N.W.2d 167 (1965). *Id.* at 308. But O'Meara argues that the holding in *Wakefield* is broad and that the rationale offered in support of the holding is equally applicable to relationship evidence admitted pursuant to section 634.20. There is merit in O'Meara's argument.

The *Wakefield* court acknowledged that a judgment of acquittal does not signify innocence and that it is possible that the evidence of prior conduct, while insufficient to convict, would be sufficient to meet the clear-and-convincing standard required for admission of *Spreigl* evidence. 278 N.W.2d at 308. Nonetheless, the *Wakefield* court unequivocally concluded that when one jury has already found reasonable doubt that a defendant committed the alleged criminal conduct, it is "fundamentally unfair" to permit a subsequent jury to hear evidence of that criminal conduct "under *any* circumstances," even if it is not offered as substantive evidence and, therefore, cannot itself be the basis of a conviction. *Id.* at 308–09 (emphasis added). Although section 634.20 relationship evidence is distinct from *Spreigl* evidence, "the purpose of each type of evidence is similar." *State v. Meldrum*, 724 N.W.2d 15, 20 (Minn.App.2006), *review denied* (Minn. Jan. 24, 2007).

The state counters that *Wakefield* is inapposite because it predates section 634.20, which was originally enacted six years later in 1985. 1985 Minn. Laws ch. 159, § 3, at 439. But the legislature presumably was aware of *Wakefield's* unequivocal holding when it enacted section 634.20. *See Pecinovsky v. AMCO Ins. Co.*, 613 N.W.2d 804, 809 (Minn.App.2000)

(holding that we presume that the legislature acts with full knowledge of existing caselaw), *review denied* (Minn. Sept. 26, 2000). Further, when the Minnesota Supreme Court adopted section 634.20 as a rule of evidence in 2004, it held only that relationship evidence is admissible under the statute without the necessity of affording the defendant the same procedural safeguards applicable to the admission of *Spreigl* evidence. *McCoy*, 682 N.W.2d at 161 (holding that relationship evidence is admissible "without requiring that [it] first be established by clear and convincing evidence").

The *McCoy* court was not required to address the concern expressed in *Wakefield* that even "[r]estricted categories and procedural safeguards ... do not eliminate prejudice to the defendant nor free him from the necessity to defend against such evidence." *Wakefield*, 278 N.W.2d at 308. Because the *Wakefield* court found "no justification for requiring a defendant to bear these burdens when ... he has been tried and acquitted of the other charge," *id.*, its decision implicates the language in section 634.20 that bars admission of relationship evidence when the risk of unfair prejudice substantially outweighs its probative value. *Cf.* Minn.Stat. § 645.17(4) (2006) (stating presumption that the legislature intends for prior judicial constructions of a law's language to be placed upon "subsequent laws on the same subject matter"). Thus, recognizing that section 634.20 was not enacted until several years after the release of *Wakefield*, we nonetheless conclude that case remains controlling precedent and bars admission of "similar conduct" of which a defendant has been acquitted. Such evidence is so unfairly prejudicial that it inherently violates the probative/prejudicial balancing test.[2] *See*

**2.** The state also emphasizes that section

634.20 evidence need not be proven by clear

*Wakefield,* 278 N.W.2d at 308–09 (stating that burden placed on defendant by the admission of previously acquitted offense evidence contravenes the basic principle "that once the state has mustered its evidence against a defendant and failed, the matter is done"). Therefore, the district court erred by admitting evidence of the March 2006 incidents.

■ Our inquiry does not end, however, with our determination that the district court erred in admitting evidence of conduct when O'Meara had been acquitted of charges arising out of that conduct. When the district court erroneously admits evidence, we will nonetheless affirm unless the appellant establishes that he was prejudiced by the abuse of discretion. *State v. Clark,* 738 N.W.2d 316, 348 (Minn.2007). We will examine the record to determine whether there is a reasonable possibility that the wrongfully admitted evidence significantly affected the verdict. *Id.*

O'Meara does not argue that he was prejudiced by the district court's error or even address the prejudice prong of the analysis. Moreover, our searching review of the record reveals that there was ample record evidence to support O'Meara's convictions, and R.O.'s testimony regarding the March 2006 incidents was only a small portion of the evidence presented to the jury. We conclude that O'Meara has not carried his burden on the issue of prejudice. Therefore, despite the error in admitting evidence of conduct of which

O'Meara was acquitted, reversal is not required here.

## II.

■ O'Meara also challenges the district court's jury instruction on the pattern-of-harassing-conduct charge, arguing that the district court erroneously permitted the jury to convict based on prior conduct for which he previously had been prosecuted and either convicted or acquitted. O'Meara incorporates into this challenge by reference the *Wakefield* argument he articulated with respect to the relationship evidence.

The state responds that O'Meara has waived his argument by failing to propose different jury instructions or to object to the district court's jury instructions on the ground that they improperly permitted the jury to convict based on conduct for which he had already been convicted.[3] O'Meara requested an instruction from the district court that would more specifically identify the dates of the alleged underlying acts of harassment and, in doing so, advised the district court that he would not object to the district court including the November 2003 incident among the alleged underlying acts of harassment. In so doing, O'Meara effectively represented to the district court that he had no objection to a jury instruction permitting the jury to consider domestic-assault conduct for which he was convicted as satisfying an element of the offense of pattern of harassing conduct. And although O'Meara argued that

and convincing evidence. But our decision is based on the inherently prejudicial nature of such evidence, which is unaffected by standard-of-proof considerations. *Wakefield,* 278 N.W.2d at 308. We discern no reason why the lack of a requirement that section 634.20 evidence be proven by clear and convincing evidence should undermine *Wakefield*'s applicability in this context.

3. The state does not appear to apply its waiver argument to O'Meara's claim that the instruction improperly permitted the jury to convict based on prior criminal conduct of which he had been acquitted. For clarity, however, we address the state's waiver argument in connection with O'Meara's claims regarding both conduct resulting in conviction and that resulting in acquittal.

the jury instructions should more specifically identify the dates of the alleged conduct, he did not request an instruction cautioning the jury that it was not permitted to consider the March 2006 evidence as substantive evidence of an element of the pattern of harassing conduct. Thus, we conclude that O'Meara failed to propose jury instructions consistent with his argument on appeal or to object on the grounds that the instructions permitted consideration of prior conduct for which he had already been convicted or acquitted.

■ "A defendant's failure to propose specific jury instructions or to object to instructions before they are given to the jury generally constitutes a waiver of the right to appeal." *State v. Cross*, 577 N.W.2d 721, 726 (Minn.1998). We will not review unobjected-to jury instructions unless they contain (1) error, (2) that is plain, and (3) the error affected the defendant's substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn.1998); *see also* Minn. R.Crim. P. 31.02 (permitting appellate courts to consider plain errors that "were not brought to the attention of the [district] court"). If this three-prong test is satisfied, we will correct the error "only if it seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Meldrum*, 724 N.W.2d at 20 (alteration in original) (quotation omitted).

There is superficial appeal in O'Meara's argument that the district court's failure to better clarify for the jury which evidence it was permitted to consider substantively and which evidence was relationship evidence, particularly in light of our conclusion that the district court erred by admitting the March 2006 incidents as relationship evidence. But O'Meara bears the "heavy burden" of persuading us that the instructions were prejudicial and affected the outcome of his case. *Griller*, 583 N.W.2d at 741. He is unable to meet

this burden. The jury's finding of not guilty on one of the violation-of-a-restraining-order charges suggests that it was not swayed from its obligation to acquit unless the state had proven each element of an offense beyond a reasonable doubt. Moreover, the jury's findings of guilt with respect to the three remaining violation-of-a-restraining-order counts establish the two incidents of harassing conduct required for a conviction of pattern of harassing conduct. *See* Minn.Stat. § 609.749, subd. 5(b)(6) (requiring proof of two or more qualifying acts within a five-year period and including violations of a harassment restraining order among qualifying acts). O'Meara has thus failed to demonstrate that any error on the part of the district court could have affected the outcome of this case.

### III.

■ Finally, O'Meara alleges that the district court erred by imposing sentences for both the conviction of pattern of harassing conduct and the conviction of harassment, rather than solely on the pattern-of-harassing-conduct conviction. O'Meara urges that sentencing him on both convictions violated Minn.Stat. § 609.035 (2004) because the two convictions were based on a single behavioral incident. We see no merit in O'Meara's argument on this issue.

Under Minn.Stat. § 609.035, subd. 1 (2004), "if a person's conduct constitutes more than one offense under the laws of this state, the person may be punished for only one of the offenses." Therefore, a district court may impose only one sentence when multiple offenses are part of a single behavioral incident. *State v. Schmidt*, 612 N.W.2d 871, 876 (Minn.2000).

■ We may review whether the record supports a district court's determination that conduct underlying two offenses did

not consist of a single behavioral incident. *State v. Nordby*, 448 N.W.2d 878, 880 (Minn.App.1989). But the district court's determination of whether multiple offenses constitute a single behavioral incident is a factual determination that we will not disturb unless clearly erroneous. *State v. Heath*, 685 N.W.2d 48, 61 (Minn.App.2004), *review denied* (Minn. Nov. 16, 2004). A factual determination is clearly erroneous when it is unsupported by the record. *Id.*

"The determination of whether multiple offenses are part of a single behavioral act under section 609.035 ... involves an examination of all the facts and circumstances." *State v. Soto*, 562 N.W.2d 299, 304 (Minn.1997). Whether multiple offenses are part of a single behavioral incident depends on factors such as the time and place of the offenses, and whether they were motivated by a single criminal objective. *Schmidt*, 612 N.W.2d at 876.

The district court found that the harassment conviction and the pattern-of-harassing-conduct convictions were not based on a single behavioral incident. While acknowledging that there was likely a single criminal objective underlying both offenses—"harassing his spouse"—the court reasoned that O'Meara's conduct involved many different forms of harassment and distinguished his case from *Schmidt*, which involved a single form of harassing conduct. *See id.* at 874, 876 (repeatedly driving down victims' street). Rather, the district court believed that the facts and circumstances of O'Meara's case more closely resembled those present in *State v. Richardson*, which involved multiple forms of harassing conduct in multiple locations over a period of years and, therefore, supported multiple sentences. 633 N.W.2d 879, 888–89 (Minn.App.2001) (distinguishing *Schmidt* ).

Moreover, the harassment count, as alleged, focused only on telephone contact and specifically identified Minn.Stat. § 609.749, subd. 2(4)-(5), as the basis for the charge; by contrast, the allegations underlying the pattern of harassing conduct were not limited to any particular form of harassing behavior. *See Schmidt*, 612 N.W.2d at 876 (evaluating section 609.035 challenge by examining language in complaint).

Finally, although harassment can be a lesser-included offense of pattern of harassing conduct, Minn.Stat. § 609.749, subd. 5(b)(1), harassment was not a lesser-included offense in this case because telephone contact was only one of O'Meara's multiple forms of harassing conduct. As discussed above, the three counts of violation of a harassment restraining order, which largely concerned non-telephone contact, support the jury's guilty verdict as to a pattern of harassing conduct. *See id.*, subd. 5(b)(6) (including violation of a harassment restraining order among qualifying predicate offenses). Further, the district court's decision to dismiss the four counts of violation of a harassment restraining order is consistent with an implicit finding that the pattern of harassing conduct was based on multiple violations of the harassment restraining order, not the telephone harassment. Therefore, the district court's decision that O'Meara's harassment conviction and his pattern-of-harassing-conduct conviction were not a single behavioral incident is not clearly erroneous, and the district court did not err by sentencing O'Meara on both counts.

## DECISION

The district court did not err by failing to more explicitly weigh the probative value of the proffered relationship evidence against its potential prejudicial effect. Although the district court erred by admitting evidence of prior "similar conduct" for

which appellant had been acquitted, this record demonstrates that the error was harmless. Appellant failed to demonstrate that the district court's jury instruction on pattern of harassing conduct constituted plain error affecting his substantial rights. The district court also did not err by sentencing appellant on both his conviction of pattern of harassing conduct and his conviction of harassment.

**Affirmed.**