*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0395**

State of Minnesota,
Respondent,

vs.

Joseph Greene,
Appellant.

**Filed February 13, 2017
Affirmed in part, reversed in part, and remanded
Connolly, Judge**

Steele County District Court
File No. 74-CR-15-345

Lori Swanson, Attorney General, Karen B. McGillic, Assistant Attorney General, St. Paul, Minnesota; and

Daniel McIntosh, Steele County Attorney, Owatonna, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Julie Loftus Nelson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Reilly, Presiding Judge; Connolly, Judge; and Bjorkman, Judge.

UNPUBLISHED OPINION

**CONNOLLY**, Judge

On appeal from his conviction of second-degree assault with a dangerous weapon and felony domestic assault, appellant argues that (1) he is entitled to a new trial because the district court erred when it ruled that the state could introduce evidence of a prejudicial prior bad act as relationship evidence under Minn. Stat. § 634.20 (2014); (2) his criminal-history score was improperly calculated when he was assigned a felony point for a prior conviction that involved multiple offenses and victims and/or the prior felony was sentenced as a gross misdemeanor; and (3) his conviction for felony domestic assault must be vacated because it is a lesser-included offense of second-degree assault arising out of the same behavioral incident involving the same victim. We conclude that the district court did not abuse its discretion in allowing evidence under Minn. Stat. § 634.20 and that felony domestic assault is not a lesser-included offense of second-degree assault. However, because we conclude that appellant's criminal-history score was improperly calculated, we reverse and remand in part for resentencing based on the correct criminal-history score.

**FACTS**

Appellant Joseph Greene and the victim, K.H., met through an online dating website and spoke with each other on and off for a "couple of years." In December 2014, appellant and K.H. finally met when appellant visited her. From that point forward the relationship was an exclusive, romantic, and sexual relationship. The couple lived together at K.H.'s residence. On the afternoon of February 5, 2015, K.H. was at the house doing normal housework duties, including laundry. It was a weekday and her son was at school. K.H.

2

was in the bedroom folding laundry when appellant came home and "started spazzing out on [K.H.] for being unorganized." Appellant used racial slurs toward K.H., threw her against a wall, and then went downstairs to grab a steak knife. Appellant returned upstairs with the steak knife and threatened K.H. with it, dragging it along K.H.'s throat. Appellant then got a nail, heated it with a lighter and told K.H. he was going to burn her with it every time she made him upset. He used the heated nail on her left forearm, leaving a red mark. Appellant then went downstairs and, after a few minutes, K.H. followed.

Once K.H. arrived downstairs, appellant prevented her from entering the kitchen by pushing her into the laundry room while holding the knife to her chest, forced her to sit on the washing machine, and stood between her legs poking her with his finger and calling her derogatory names. Appellant threatened to cut K.H.'s face to make her "look like . . . the joker"; grabbed her mouth with his hand; threatened to break her jaw while grabbing her neck; and banged K.H.'s head on a cabinet. K.H. testified that she tried to escape and tried everything she could to get out but appellant would just come at her more forcefully.

Eventually, K.H. told appellant she was thirsty and needed something to drink and appellant let her go to the kitchen. As she was drinking water, appellant noticed that she was looking toward the door and said, "if you want to go, go. If you want to run, run." K.H. waited until appellant went back upstairs and then ran to her neighbor's house. Her neighbor encouraged her to call the police but, before calling, K.H. checked to see if appellant was still at home. After confirming that he was not at home, K.H. sent messages to appellant via Facebook before calling 911.

3

Appellant was arrested and charged with second-degree assault and felony domestic assault. Prior to the start of the jury trial, appellant stipulated that he had prior convictions for domestic assault and malicious punishment of a child and agreed that these prior convictions served as a basis for enhancing the domestic-assault charge to a felony.

At trial, the state wished to offer evidence of a previous incident between appellant and K.H. that occurred in late-January 2015 during which appellant "flip[ped] out on [K.H.]" At a pretrial hearing, the district court ruled that this evidence was admissible as relationship evidence under Minn. Stat. § 634.20. Prior to K.H.'s testimony regarding the incident, the district court gave a cautionary instruction. The district court explained:

> This evidence is being offered for the limited purpose of demonstrating the nature and extent of the relationship between [appellant] and [K.H.] in order to assist you in determining whether [appellant] committed those acts with which [he] is charged in the complaint.
> You may use this evidence to attempt to better understand the history of the relationship between [appellant] and [K.H.]. And this evidence may be used by you to place those acts with which [appellant] has been charged in the context of their relationship.
> This evidence is not to be used to prove the character of [appellant] or that [appellant] acted in conformity with such character. [Appellant] is not being tried for and may not be convicted of any behavior other than the charged offenses. You are not to convict [appellant] on the basis of conduct on or about January 29, 2015. To do so might result in unjust double punishment.

K.H. then proceeded to testify that on January 29, 2015, appellant told K.H. to get in the bathtub wearing her clothes (the bathtub incident). Appellant then put plastic bags on his boots and around his hands, turned up the radio to muffle out any screaming, and threatened to kill appellant with a switchblade. K.H. testified that this went on for 15-20

4

minutes before appellant stopped and took her out of the bathtub, soaking wet. Appellant testified that the event was traumatizing.

The jury found appellant guilty on both counts. At sentencing, appellant's attorney argued that appellant should be sentenced to "45 months, which is the . . . mandatory minimum sentence under the guidelines for Count 1." The court stated its intent to "convict on Count 1 and consider the second count as the same course of conduct or the same behavioral incident" without objection. The district court denied appellant's request for a downward departure and concluded that it would "just sentence [appellant] to the presumptive middle of the box, 45 months." A judgment of conviction was subsequently entered on both the second-degree assault and the felony domestic-assault counts.

## D E C I S I O N

**I.    Did the district court err when it admitted relationship evidence under Minn. Stat. § 634.20, concluding that the testimony was not unfairly prejudicial?**

Evidentiary rulings generally rest within the district court's discretion, and this court will not reverse a district court's decision on the admission of evidence absent an abuse of that discretion. *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003). This rule applies to the admission of relationship evidence. *State v. Matthews*, 779 N.W.2d 543, 553 (Minn. 2010). If the district court erroneously admits evidence, an appellate court will nonetheless affirm unless the appellant establishes prejudice from the abuse of discretion, which occurs if there is a reasonable possibility that the wrongfully admitted evidence significantly affected the verdict. *State v. O'Meara*, 755 N.W.2d 29, 35 (Minn. App. 2008).

5

Generally, evidence of prior bad acts is inadmissible because the jury may punish the defendant for that prior bad act for which he is not currently on trial. *See, e.g.*, *State v. Fardan*, 773 N.W.2d 303, 315 (Minn. 2009); Minn. R. Evid. 404(b). However, a district court may admit evidence of "domestic conduct by the accused against the victim of domestic conduct, or against other family or household members . . . unless the probative value is substantially outweighed by the danger of unfair prejudice." Minn. Stat. § 634.20. "'Domestic conduct' includes, but is not limited to, evidence of domestic abuse . . . ." *Id.* "Domestic abuse" includes physical harm, bodily injury, or assault, as well as the infliction of fear of imminent physical harm, bodily injury, or assault. Minn. Stat. § 518B.01, subd. 2(a) (2014). "Family or household members" includes persons who are presently residing together or who have resided together in the past. *Id.*, subd. 2(b)(4) (2014).

"Evidence that helps to establish the relationship between the victim and the defendant or which places the event in context bolsters its probative value." *State v. Barnslater*, 786 N.W.2d 646, 652 (Minn. App. 2010) (quotation omitted), *review denied* (Minn. Oct. 27, 2010). "Obviously, evidence showing how a defendant treats his family or household members . . . sheds light on how the defendant interacts with those close to him, which in turn suggests how the defendant may interact with the victim." *State v. Valentine*, 787 N.W.2d 630, 637 (Minn. App. 2010), *review denied* (Minn. Nov. 16, 2010).

Unfair prejudice "is not merely damaging evidence, even severely damaging evidence; rather, unfair prejudice is evidence that persuades by illegitimate means, giving one party an unfair advantage." *State v. Bell*, 719 N.W.2d 635, 641 (Minn. 2006) (quotation omitted). Cautionary instructions minimize the potential for prejudice. *State v.*

6

*Lindsey*, 755 N.W.2d 752, 757 (Minn. App. 2008), *review denied* (Minn. Oct. 29, 2008). "A district court should instruct the jury regarding the proper use of relationship evidence presented under section 634.20 both when the evidence is received and in the final jury instructions." *Barnslater*, 786 N.W.2d at 653. "A district court's limiting instruction lessens the probability of undue weight being given by the jury to the evidence." *State v. Ware*, 856 N.W.2d 719, 729 (Minn. App. 2014) (quotation omitted).

Appellant's action of forcing K.H. into a bathtub, placing plastic bags over his hands and feet, and threatening K.H. with a switchblade is enough to make a reasonable person afraid of imminent bodily harm. K.H. was the victim in the bathtub incident as well as the victim in the incident for which appellant was on trial and appellant and K.H. were living together. All the requirements for Minn. Stat. § 634.20 are satisfied. The only remaining question is whether the probative value was outweighed by the danger of unfair prejudice. We conclude that the evidence was properly admitted and not unfairly prejudicial.

Appellant argues that the rationale behind Minn. Stat. § 634.20 does not apply here because (1) this is not a case where the victim claims she does not remember the events and there is no other eyewitness testimony and (2) the relationship evidence is not probative because it "does not accurately portray the couple's history" because much of that history consisted of e-mails and social media contact. Traditionally, domestic-abuse cases are difficult to prosecute due to the abuser's assertion of control, the private nature of the abuse, and the victim's unwillingness to testify. *State v. McCoy*, 682 N.W.2d 153, 161 (Minn. 2004). As a result, evidence may be offered to show the history of the relationship between the accused and the victim of domestic abuse. *Id*. Here, K.H. did not fail to show up at

trial, she was able to remember what happened, and she did not recant her statements. We agree that the rationale for allowing the evidence under Minn. Stat. § 634.20, expressed in *McCoy* is not consistent with the facts of this case. However, evidence showing how a defendant treats his household members "sheds light on how the defendant interacts with those close to him, which in turn suggests how the defendant may interact with the victim." *Valentine*, 787 N.W.2d at 637. While much of the relationship occurred over social media, the bathtub incident sheds light on how appellant acted during the month that he was living with K.H., supporting the reliability of K.H.'s testimony. Additionally, K.H.'s testimony was important because her testimony helped put into context her fear of serious bodily harm given appellant's past history of abuse.

Appellant also argues that the danger of unfair prejudice was too great because the evidence that appellant allegedly threatened K.H. with a knife in a similar fashion just a week prior to the charged offense could only have served to persuade the jury that appellant was a bad person who acted in conformity with his previous actions. The fact that the alleged bathtub incident occurred one week before the incident for which appellant was charged is emphasized by appellant as being unfairly prejudicial. But this court reviews only for an abuse of discretion, not to see whether it would reach the same result.

Moreover, the district court gave cautionary instructions before testimony of the bathtub incident and during its final instructions to the jury. These cautionary instructions minimized the potential for prejudice and decreased the potential that the evidence persuaded by illegitimate means, giving one party an unfair advantage. *Bell*, 719 N.W.2d at 641; *Lindsey*, 755 N.W.2d at 757. We conclude that the cautionary instructions

8

combined with the substantial probative value of the evidence, indicating similar domestic conduct and giving the jury context of the relationship, outweighs any danger of unfair prejudice to appellant. The district court did not abuse its discretion in admitting the relationship evidence.

**II.     Did the district court err in calculating appellant's criminal-history score?**

"[I]nterpretation of the sentencing guidelines [is] subject to de novo review. . . . We apply the rules of statutory construction to our interpretation of the sentencing guidelines." *State v. Campbell*, 814 N.W.2d 1, 4 (Minn. 2012) (citation omitted). However, the district court's determination of a defendant's criminal-history score will not be reversed absent an abuse of discretion. *State v. Stillday*, 646 N.W.2d 557, 561 (Minn. App. 2002), *review denied* (Minn. Aug. 20, 2002). Appellant argues that the criminal-history score was improperly calculated and that he should have received a criminal-history score of three and not four. The state agrees.

Under the Minnesota Sentencing Guidelines, a district court sentences an offender based on a presumptive sentencing range determined by the severity level of the offense and the offender's criminal-history score. *State v. Jackson*, 749 N.W.2d 353, 359 n.2 (Minn. 2008). The district court properly noted that second-degree assault is a severity-level-six offense. Minn. Sent. Guidelines 5.A (2014). The district court then concluded that appellant had four criminal-history points. Appellant was assigned four criminal-

history points based on four prior convictions from two Hennepin County cases from 2010.[1]  For each conviction, the district court assigned one criminal-history point.

Generally, a defendant is assigned one felony point for every felony conviction for which a sentence was stayed or imposed before the current sentencing.  Minn. Sent. Guidelines 2.B.1.a (2014) (assigning one point to prior severity-level-four offenses).  However, a felony conviction is deemed a gross misdemeanor if the sentence imposed for the felony is within the gross misdemeanor limits.  Minn. Stat. § 609.13, subd. 1(1) (2014).  "[W]hen a prior felony conviction resulted in a non-felony sentence (misdemeanor or gross misdemeanor), the conviction must be counted in the criminal[-]history score as a misdemeanor or gross misdemeanor conviction as indicated in section 2.B.3."  Minn. Sent. Guidelines 2.B.1.h (2014).  Prior gross misdemeanor and misdemeanor convictions count as "units" and four units are needed for one criminal-history point.  Minn. Sent. Guidelines 2.B.3 (2014).  Prior to sentencing, appellant had been sentenced for felony domestic assault and three counts of malicious punishment of a child under four years old.  However, one count of malicious punishment of a child under four years old was deemed a gross misdemeanor pursuant to Minn. Stat. § 609.13, subd. 1(1).  As a result, appellant only had three felony points and not four because he did not have enough misdemeanor and gross misdemeanor units to make a point.  The presumptive commitment range for a severity-level six offense for an offender with three criminal-history points is 34 to 46 months,

---

[1] Appellant was convicted of domestic assault by strangulation and two counts of malicious punishment of a child under four years old in one Hennepin County case and one count of malicious punishment of a child under four years old in a different Hennepin County case.

rather than the 39 to 54 months that the district court considered the presumptive range. Minn. Sent. Guidelines 4.A (2014).

The state still argues that the panel should affirm the sentence of 45 months in prison because the district court's sentence of 45 months in prison is within the range for appellant's adjusted presumptive sentence and thus the district court did not abuse its discretion. "All three numbers in any given cell [on the sentencing guidelines grid] constitute an acceptable sentence[.]" *Jackson*, 749 N.W.2d at 359 n.2. Appellant relies on a recent United States Supreme Court case involving the federal sentencing guidelines in which the district court applied a sentencing guidelines range higher than the applicable one. *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1341 (2016). "The error went unnoticed . . . so no timely objection was entered." *Id*. The Supreme Court held that "[w]hen a defendant is sentenced under an incorrect Guidelines range—whether or not the defendant's ultimate sentence falls within the correct range—the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." *Id.* at 1345.

Minnesota courts have concluded that "a sentence based on an incorrect criminal history score is an illegal sentence . . . and therefore . . . correctable at any time." *State v. Maurstad*, 733 N.W.2d 141, 147 (Minn. 2007) (quotation omitted). In order to effectuate the public policy to "maintain uniformity, proportionality, rationality, and predictability in sentencing[,]" sentences must be based on correct criminal-history scores, as these are the "mechanism district courts use to ensure that defendants with similar criminal histories receive approximately equal sanctions for the same offense." *Id.* at 146-47 (quotations

11

omitted). The fact that appellant's sentence falls within the authorized sentencing range does not change the fact that the sentence was illegal in the first instance. We conclude that the district court abused its discretion in sentencing appellant based on the wrong history-score range and appellant should be resentenced based on the correct criminal-history-score range. Moreover, because the district court stated that it was giving a "middle of the box" sentence, we are not convinced it would still sentence appellant to 45 months in prison since the range is now different. For that reason, this matter is remanded for resentencing.

### III. Should the felony domestic-assault conviction be vacated because it is a lesser-included offense of second-degree assault arising out of the same behavioral incident involving the same victim?

Appellant argues that, pursuant to Minn. Stat. § 609.04, subd. 1 (2014), he cannot be convicted of multiple violations for the same offense that was committed as part of a single behavioral incident against the same victim. "Upon prosecution for a crime, the actor may be convicted of either the crime charged or an included offense, but not both." Minn. Stat. § 609.04, subd. 1. An included offense could be: "A lesser degree of the same crime; or . . . [a] crime necessarily proved if the crime charged were proved." Minn. Stat. 609.04, subd. 1(1), (4). Appellant argues that felony domestic assault is an "included offense" of second-degree assault, describing felony domestic assault as fifth-degree assault enhanced to a felony if the defendant has convictions for two or more qualified domestic violence-related offenses in the previous ten years and as a crime that is necessarily proved when second-degree assault is proved.

This court recently concluded, in an unpublished opinion, that felony domestic assault is not a lesser-included offense of third-degree assault under Minn. Stat § 609.04, subd. 1. *State v. Clemmensen*, 2016 WL 5640625 at *2 (Minn. App. Oct. 3, 2016).[2] The legislature created a multi-tier statutory scheme dealing with assault in 1979 when it enacted Minn. Stat. § 609.221 (2014) (assault in the first degree), Minn. Stat. § 609.222 (2014) (assault in the second degree), Minn. Stat. § 609.223 (2014) (assault in the third degree), and Minn. Stat. § 609.2231 (2014) (assault in the fourth degree). 1979 Minn. Laws ch. 258, §§ 4-7 at 550. The legislature subsequently added a fifth degree of assault, Minn. Stat. § 609.224 (2014), to this multi-tier statutory scheme. 1983 Minn. Laws ch. 169, §§ 1, 2 at 424. The legislature did not include domestic assault in this multi-tier scheme. The legislature separately addressed domestic assault when it enacted Minn. Stat. § 609.2242 (2014), which does not assign any degree to domestic assault. Within the domestic-assault statute, the legislature created a separate multi-tier statutory scheme that treats a domestic-assault offense as a misdemeanor, a gross misdemeanor, or a felony, depending on the number of offense convictions an offender has within ten years. Minn. Stat. § 609.2242, subds. 1-4.

Additionally, appellant's arguments comparing fifth-degree assault and felony domestic assault are misleading. Felony domestic assault requires *either* fifth-degree assault *or misdemeanor domestic assault* in addition to convictions for two or more qualified domestic violence-related offenses in the previous ten years. Minn. Stat.

---

[2] While this unpublished opinion carries no precedential value, we are persuaded by the reasoning of that case.

§ 609.2242, subd. 4 (emphasis added).  The jury was instructed on the requirements of domestic assault and the jury convicted appellant of domestic assault that was enhanced to a felony because appellant stipulated that he had two or more qualified domestic violence-related offenses in the previous ten years.  The jury was never told he had prior convictions, based on his stipulation.  Appellant's comparisons between fifth-degree assault and felony domestic assault are not relevant in this case because appellant was never charged with fifth-degree assault.  We conclude that Minn. Stat. § 609.04, subd. 1(1) does not prevent appellant from being convicted of both second-degree assault and felony domestic assault.

In order to succeed under subd. 1(4), appellant must show that felony domestic assault is "necessarily proved if [second-degree assault] were proved."  Minn. Stat. § 609.04, subd. 1(4).  Domestic assault is not necessarily proved if second-degree assault is proved.  Unlike second-degree assault, felony domestic assault requires proof that the assailant and the victim were family or household members and it must be shown that appellant had two or more previous qualified domestic violence-related offense convictions within ten years.  *Compare* Minn. Stat. § 609.222 *with* Minn. Stat. § 609.2242, subd. 4. Appellant's charges required that the victim be a family or household member and appellant did not dispute that he had two or more previous qualified domestic violence-related offense convictions within ten years.  As a result, Minn. Stat. § 609.04, subd. 1(4) does not apply to prevent multiple convictions.

Because neither Minn. Stat. § 609.04, subd. 1(1) nor 1(4) apply to prevent multiple convictions, appellant's argument that his conviction for domestic assault must be vacated

14

because the domestic assault was committed during the same behavioral incident and against the same victim as the second-degree assault fails.

**Affirmed in part, reversed in part, and remanded.**

15